270 P.2d 794

**SCHNATZMEYER**

v.

**INDUSTRIAL COMMISSION et al.**

No. 5835.

Supreme Court of Arizona.

May 24, 1954.

H. S. McCluskey, Phoenix, for petitioner.

John R. Franks, Phoenix, Robert E. Yount, Donald J. Morgan and Robert K. Park, Phoenix, of counsel, for respondent Industrial Commission.

WINDES, Justice.

In April, 1951, Edward Henry Schnatzmeyer, a resident of Kingman, Arizona, petitioner herein, was injured by an accident arising out of and in the course of his employment. In May, the Industrial Commission of Arizona, respondent herein, made its finding that petitioner was entitled to compensation under the Workmen's Compensation Law. The following October, a consulting board of doctors recommended that in view of evident improvement with activity and use, the patient should increase his activities. He was subsequently, November, 1951, placed on a partial temporary basis, with a finding he was able to return to work and ordered that he make a sincere effort to secure the same. As a result of further medical advice, surgery was performed in March, 1952. In January, 1953, a consulting board of three doctors reported the patient's condition stationary with a 20 percent physical functional disability, and the respondent entered findings and award for temporary total disability pending determination of loss of earning capacity and directed that petitioner make a sincere, honest and conscientious effort to obtain light work of such nature as he is capable of performing. The petitioner not having obtained employment, in May, 1953 a hearing was had for the purpose of determining his earning capacity. This resulted in findings and award to the effect that petitioner suffered 30 percent loss of earning capacity and was entitled to $54.27 monthly as compensation for permanent partial disability. On motion of petitioner a rehearing was had which resulted in amended findings with the same compensation and percentage in loss of earning capacity. On petitioner's application, certiorari issued and the matter is here for review.

Respondent found the average monthly wage of petitioner prior to the injury to be $328.90. It also found he was able to perform services as a watchman, night watchman, custodian and other light occupations not requiring strenuous physical activity; that at such employment he is capable of earning at least $50 per week or approximately $200 per month; and that this represented 70 percent of his earning capacity at the time of the injury. Such is the method whereby the Commission ar-

rived at its conclusion that petitioner had sustained a 30 percent loss of earning capacity and was entitled to $54.27 monthly compensation. The calculation will not sustain the Commission in its conclusion. Two hundred dollars is 70 percent of approximately $286 and not 70 percent of his former monthly wage of $328.90. Seventy percent of $328.90 is approximately $230 and not $200. Assuming the award is otherwise legal, the petitioner is entitled to 55 percent of the difference between his earning capacity before and after the injury. This difference on the Commission's findings is $128.90, and 55 percent of this figure is approximately $70.90 and not $54.27, the monthly compensation allowed. The difference is too great to come within the sphere of approximation. It appears therefore, that the Commission erred in fixing only 30 percent loss of earning power.

The principal condemnation leveled against this award by petitioner is that he is unable to secure employment in the Kingman area of a nature which he, in his disabled condition, is capable of performing. It is urged that the undisputed evidence is such as to compel the Commission to keep him on a total disability status until such employment is available. The rule is too well settled to require citation of authority that the only compensable unemployment is that caused by the disability. Clearly, from the evidence, petitioner is incapacitated from following his former line of work as a carpenter but is capable of performing light work if the same were available. Consequently, if compensation is to be allowed on a basis of inability to secure employment he is capable of performing, the Commission must find as a fact that his failure to find work is caused by his injuries. This court has sanctioned the principle that if one is injured in such manner that he could perform some services with some earning power, but because of the disability he cannot secure the employment, the injury is compensable. Ossic v. Verde Central Mines, 46 Ariz. 176, 49 P.2d 396; Gibson v. Industrial Commission, 68 Ariz. 313, 205 P.2d 588. In both these cases, we approved the principles announced in the Massachusetts case of In re Sullivan, 218 Mass. 141, 105 N.E. 463, L.R.A.1916A, 378, wherein an award was sustained when the evidence showed inability to secure employment after diligent effort. When a situation is presented of one partially disabled who has made sincere but fruitless effort to obtain work such as he is capable of performing, it is evidence of the causal connection between the injury and the lack of work, but it is not necessarily conclusive that the failure of employment is caused by the disability. To sustain petitioner in his contention, we would be required to say that all the evidence, including that of his unemployment, required the Commission to find that his idleness was caused by his injuries. Bearing on this question, the Commission found that petitioner's endeavors to obtain work consisted

generally in keeping registered with his union and the employment office and that he had not made diligent effort to obtain work by personal solicitation. Petitioner testified that he had made some inquiries but when asked if he had sought employment from other sources than the employment office and the union, he answered, "No. I haven't." A boat-building establishment opened up and he had made no effort to ascertain the possibility of employment with this activity. He had not explored the possibility of employment in the mining industry in the area of which there is considerable. The tourist business is one of the sustaining activities in the Kingman area but he did not know whether there was work for him in that field. The conclusion is inescapable that petitioner relied primarily upon his union and the employment service to secure employment. The cause of unemployment is necessarily an inference to be drawn from all the facts and circumstances bearing on that issue, and we are unable to say that the Commission must infer from the evidence herein that the cause of his failure to secure work is attributable to his injuries.

In the finding that petitioner did not make adequate effort to secure work, the Commission also found that he made no effort to obtain employment outside the area of Kingman. Unquestionably, this is true, but we think under the circumstances herein he was not obliged to make such effort. He is only required to make reasonable effort. Utah Fuel Co. v. Industrial Commission, 76 Utah 141, 287 P. 931. We have approved this decision in Hoffman v. Brophy, 61 Ariz. 307, 149 P.2d 160. Petitioner and his wife had lived in Kingman for many years and owned their own home free of encumbrances. It would be most unreasonable to require of him that he abandon his established home and, at an expense he can ill afford, that he travel from state to state or community to community in a hopeful but possibly futile effort to obtain a secure position that would produce at least $200 per month. To say the least, there must be some reasonable assurance of security in the new location before he can be required to assume the burdensome task of the establishment of a new home. This principle was well stated in the case of Roller v. Warren, 98 Vt. 514, 129 A. 168, 170, in the following phraseology:

"* * * there is incapacity for work when a man has a physical defect *which makes his labor unsalable in any market reasonably accessible* to him * * *." (Emphasis supplied.)

We know not how much weight was given this factor in deciding the cause of his unemployment, but it should have been given no consideration under the facts in this case.

The Commission made the following finding:

"11. That general economic conditions in the area of Kingman, Arizona,

are not conducive to the obtaining of employment. That applicant's failure to obtain employment is not due entirely to his physical condition but is due partly to economic conditions prevailing in the area in which he resides."

This finding, when considered in connection with finding No. 10 that petitioner did not exert diligent effort to secure work, creates an element of ambiguity as to just what the Commission intended to find was the cause of the unemployment. The basic reason for requiring this effort is the obligation to minimize loss of earnings. It is an evidentiary fact that the cause of unemployment is not his injuries but his lack of effort in seeking and possibly obtaining work. Presumably, had he sought he would have found and thereby added to his earnings.

Consequently, the effect of finding No. 10 is that the cause of his unemployment was lack of effort, whereas No. 11 says the cause is economic and inferentially also his disability. The Commission's findings should be clear and unambiguous so as to enable this court to test the legal validity thereof. Finding No. 11 appears to be an attempt to fortify the award by making it fit the rule in Matlock v. Industrial Commission, 70 Ariz. 25, 215 P.2d 612. This case has been criticized for the reason that the formula therein announced ruled out entirely injury-produced unavailability of work. 2 Larson, Workmen's Compensation Law, section 57.63. The criticism is well founded. The Matlock case ruled that when failure to obtain employment was due partly to disability and partly to economic conditions, the compensation for the disability should be the difference between the former earnings and what his earnings would be if he could secure work. The effect of the formula is that under such conditions the fact the unemployment was partly due to his disability should not be considered and should have no influence in measuring his future earning power. This is in direct conflict with the principles announced in Ossic v. Verde Central Mines, supra, wherein we said [46 Ariz. 176, 49 P. 2d 402]:

"We therefore hold that in determining the percentage of disability the commission should consider not only the actual impairment of the physical and mental capacity of the injured person to do work, but whether and *to what extent* his injury is likely to deprive him of the ability to secure the work which he might do if he were permitted to attempt it." (Emphasis supplied.)

The formula announced in the Matlock case taken literally is too rigid and inelastic. The correct rule is that announced in Ossic v. Verde Central Mines, supra, that in determining percentage of disability it is the Commission's duty to consider whether and to what extent his disabilities prevented employment. The Matlock case does not permit the Commission to consider partial in-

jury-produced unavailability of work. To this extent it is disapproved. We are not unmindful of the difficulties confronting the Commission when it feels impelled from the evidence to find several contributing causes of unemployment, one of which is the disability, but it is equally difficult to accurately give the proper weight to other factors which the law requires to be considered.

The award must be set side.

LA PRADE and UDALL, JJ., concurring.

PHELPS, Chief Justice (specially concurring).

I concur with the principles of law enunciated in the majority opinion in this case to the effect that if the inability of a person to procure employment is due solely to an injury arising out of and in the course of his employment he is entitled to compensation for whatever loss in earning capacity he sustains as a result of such injury. If, however, the lack of employment is due wholly to economic conditions or to a change thereof, loss of earnings resulting therefrom is not compensable.

It is my position that under the facts in this case no part of petitioner's failure to procure work in Kingman was due to abnormal economic conditions in that community. Petitioner had been steadily employed for a number of years in Kingman as a carpenter. He testified he could have been working every day since his injury as a carpenter if he had not been injured. However, under the decisions of this court the disability of petitioner is not confined to carpentering but the disablement must extend to every kind of remunerative employment.

There is no contention by anyone that petitioner is now able or will ever be able to do carpenter work again. It is the finding of the commission that he

"* * * is capable of performing services as a watchman, night watchman, custodian, and other light occupations not requiring strenuous physical activity."

This court will take judicial notice of the fact that Kingman is a town of approximately 3500 to 4000 population. Except for the fact that it is located on a transcontinental highway and on the main line of the Santa Fe Railroad it is several miles distant from neighboring towns. The court will further take judicial notice of the fact that at all times here involved economic conditions all over the country including Kingman are, and have been, good since World War II. Wages have been high and continually increasing each year. Business and employment generally were practically on a norm with what they have been for the past several years. Unemploy-

ment in Arizona at said time was at a minimum.

The evidence discloses that tourist court business, mining, and cattle raising are the principal business resources of the Kingman community. Building construction has been such that petitioner would have been steadily employed as a carpenter had he not sustained the injury in question.

The commission based its award in this case upon the ground that petitioner was physically able to do the work of a watchman, custodian or janitor and other light occupations not requiring strenuous physical activity; that he had made no diligent effort to obtain light work and that his loss in earning capacity was due partly to economic conditions and partly to his injury.

Mrs. Nell Clack who has lived in Kingman for 35 years and during which time has been engaged in the cattle business and in mining, and C. R. Wright who has been engaged in electrical construction work in Kingman for 25 years both testified that they did not know of any watchman's job in and around Kingman. Mrs. Clack said that there were no such jobs in the cattle business at any time and that there were then none in the mining business to her knowledge. Mr. Wright did not know of any watchman's job except the night merchant patrol whose duty it was to check on the doors of the business buildings in Kingman during the night. In a community the size of Kingman where everybody knows everyone in town and the nature of their business, it is my opinion the testimony of these two witnesses does not fall in the category of negative testimony but in my view it is exactly the equivalent of saying there are and were no watchman's jobs or light work in Kingman.

The finding of the commission that petitioner is able to do janitor work is not supported by the evidence. Petitioner says he cannot do any work that requires stooping, or the use of his right hand. This is corroborated by the witness White and the medical board. This board found that the use of his right arm caused severe pain and produced a numbness in his right hand including his thumb and that he had but little grasp in the right hand. This latter defect would clearly make it impossible for him to do janitor work even if such jobs were available. The state highway department according to the evidence is apparently the only place in Kingman where a custodian is employed. The witness White further testified that he had known of no work in Kingman or vicinity since petitioner's injury which he could do and that if he had known of such work he would have informed petitioner.

It is therefore my view that the evidence clearly shows there were no jobs available in Kingman, the work of which petitioner was physically able to perform and that no effort he might have made to secure work

would have or could have resulted in his procuring such employment.

I heartily agree with the majority opinion that the law does not require an injured employee whose injury is found by the commission to be compensable, whose life is deeply rooted in his community, to leave his established home in order to seek employment in other parts of the country with no assurance of success in order to enjoy the benefits of the Workmen's Compensation Law of this state. But I am afraid the effect of the majority opinion in this case may encourage the commission to require the petitioner to do just that.

It is further my view that the commission erred in finding that economic conditions contributed to petitioner's unemployment for the reason that there is no substantial evidence in the record from which such an inference can reasonably be drawn. Had there been watchmen's jobs or other light work in Kingman and vicinity at the time of petitioner's injury and by reason of an economic recession or depression, such jobs were not available at the time his injury became stationary, then the finding of the commission that economic conditions partially contributed to his unemployment would have been justified. But surely it is not the law that if an employee who is injured by accident arising out of and in the course of his employment happens to sustain such injury in a locality where there is not now, never has been, and in all probability never will be remunerative work available, which he is capable of performing after the injury, the commission can say that his failure to procure employment was due in any degree to economic conditions.

I am convinced that petitioner's unemployment under the circumstances in this case is due solely to his injury and that such *economic conditions* as were contemplated in the decisions of this court were nonexistent in Kingman at the time, and that he is entitled to compensation on the basis of total disability.

For the reasons above stated the award should be set aside.

STANFORD, Justice (specially concurring).

Having been assigned the duty to write the original opinion in this case, in which I set aside the award of the Commission on the grounds that the failure of the petitioner to secure work was attributable to his injuries, and not having a majority of the court to sustain me in this regard, the matter was assigned to another member of the court who differed with my opinion; and after a more complete study of the case, this member has submitted the opinion that the failure of the petitioner to secure work was due both to economic conditions and to his injuries, and has also directed that the award be set aside.

From the record in this case, Edward Schnatzmeyer was operated upon on March 19, 1952, and on April 25, 1952 Dr. James J. Riordan, one of the many physicians and surgeons who attended this very complicated case, made a report following X-ray examinations, and among the statements made is the following:

"* * * There appears to be a single long-bone fragment lateral to the left of the spinus processes for these vertebrae as well as scattered bone chips over the remaining portion of the operative site. In the oblique view the bone graft appears to be showing good organization but *without apparent complete fixation of this fused area*. In *the lateral projections there is noted to be a pronounced kypho-lordotic deformity of the cervicothoracis area*. There is deformity of the transverse processes for C-6, C-7 and T-1 on the right. *Three metallic wires are present over the operative site.* * * *." (Emphasis supplied.)

From all of the records and testimony in the case I am able to state that the three metallic wires still are present over the operative site. Also, on September 5, 1952, Dr. Geo. A. Williamson gave his report on X-ray examination, which in part reads:

"AP, lateral and oblique films of the cervical dorsal spine have been obtained. These films show the results of a spinal fusion operation extending from the 6th cervical to the upper dorsal segment. *There are three strands of wire in the fused area, holding the bone in place.* He feels that a satisfactory fusion is developing across the involved area on the left side but that there is still a defect in the area on the right at the level of the first dorsal transverse process. The intervertebral foraminae in this area on the left side appear to be clear and show no encroachment whereas on the right side there is defect decrease in the size of the foramin at the level of the 1st dorsal vertebra." (Emphasis supplied.)

From the majority opinion as now submitted, I quote the following:

"* * *. The cause of unemployment is necessarily an inference to be drawn from all the facts and circumstances bearing on that issue, and we are unable to say that the Commission must infer from the evidence herein that the cause of his failure to secure work is attributable to his injuries."

In my opinion the unemployment of petitioner is due solely to his injury and he is entitled to compensation on the basis of total disability, and in this view I am supported by our case of Gibson v. Industrial Commission, 68 Ariz. 313, 205 P.2d 588, and many other cases.

Without reservation, I say the award of the Commission should be set aside.