510 P.2d 56

Charles L. TIMMONS, Petitioner,

v.

The INDUSTRIAL COMMISSION of
Arizona, Respondent,

Vallie Builders, Respondent Employer,

State Compensation Fund, Respond-
ent Carrier.

No. I CA–IC 746.

Court of Appeals of Arizona,
Division 1,
Department B.

May 24, 1973.

**58**

Cunningham, Goodson & Tiffany, Ltd. by James P. Cunningham, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, Robert K. Park, Chief Counsel State Compensation Fund, by Courtney L. Varner, Phoenix, for respondents employer and carrier.

EUBANK, Presiding Judge.

This review by writ of certiorari questions the sufficiency of the evidence to support an Award of The Industrial Commission which found, among other things, that petitioner had sustained a 52.6 percent reduction in earning capacity as a result of an industrial injury.

In September 1969 petitioner, a 43 year old carpenter employed by Vallie Builders, suffered severe burns over 40 percent of his body due to an industrial accident. He endured prolonged treatment for his injuries including extensive skin grafting on the upper portion of his body. His condition was found to be stationary in June 1970. A hearing to determine earning capacity commenced in October 1970 and was continued through January 1971 for the taking of expert testimony. On November 18, 1971, the Commission issued its Decision Upon Rehearing and Findings and Award for Unscheduled Permanent Partial Disability which found, *inter alia*:

"8. Applicant has sustained a 52.60% reduction in monthly earning capacity as the result of his industrial injury and is therefore entitled to $169.23 per month, effective upon cessation of advance payments being made pursuant to Record Of Commission's Action dated August 17, 1970, until further order of the Commission, pursuant to A.R.S. 23–1044.

"9. The foregoing determination of reduction in earning capacity is based upon the following considerations:

\* \* \* \* \* \*

"(h) He has the physical and mental capacity to work 40 hours per week as a 'keypunch night watchman' at $1.60 per hour, reflecting a monthly earning capacity of $227.31; such work is available in the Phoenix area;

"(i) Pursuant to A.R.S. 23–1044 he is entitled to monthly payments based on 55% of the difference between $585.00 and $277.31 until further order of the Commission;

"(j) The purpose of Workman's Compensation legislation is not to compensate for difficulty and pain but to compensate for lost earning capacity Maness vs. Industrial Commission, 102 Ariz. 557, 434 P.2d 643 (1967)."

It is from these Findings that petitioner requested review.

Petitioner testified before the Commission that he was completely unable to return to his former employment as a carpenter, and his testimony was supported by that of the employer. The employer testified that although petitioner had been an excellent worker prior to the accident, in view of his injuries and subsequent disability, there was nothing petitioner could do in the construction trade. Petitioner also testified that construction work was the only employment he had actively sought since his injury, and that a brief attempt on his part to repair old lawn mowers for possible resale had been abandoned. The record shows that petitioner has only a sixth grade education, and has had no experience in any trade other than construction.

Petitioner contends that Finding 9(h), supra, "is purely speculative inasmuch as . . . [he] has never worked as a keypunch night watchman at any time in his life". We find this argument inapposite since, as our Supreme Court stated in Hoffman v. Brophy, 61 Ariz. 307, 149 P.2d 160 (1944):

"It is, of course, a rule that every injured person must seek to minimize his loss, and to put forth an active effort to procure such employment as he is able to. . . . (citation omitted) It may even be necessary that he change his former

vocation. . . ." (61 Ariz. at 314, 149 P.2d at 163).

Petitioner further maintains that "there is no credible evidence that the Commission could have based its Findings upon to the effect that petitioner was able to carry out the function of a 'keypunch night watchman'." We disagree.

Dr. Morris Barton, a plastic surgeon who had treated petitioner since the injury, testified that he found petitioner's condition stable in June 1970 as far as recovery from the burns and grafts were concerned, and rated him at a 50 percent disability of both arms due to those factors. Regarding petitioner's ability to work, Dr. Barton testified as follows:

"Q  Do you have an opinion as to whether or not he could carry a timeclock weighing approximately 10 pounds on a strap around his shoulder?

"A  I think he could do that.

"Q  And walk around from station to station and clock in as a night watchman?

"A  I definitely think he could do that.

"Q  Do you have any opinion as to whether or not he could perform at a job where the only requirement is that he accept money and fill out credit cards and make change?

"A  I think that he could perform this type of job where there wasn't extreme use of the arms, yes."

In response to cross-examination, the doctor clarified his opinion as follows:

"Q  Doctor, you said on direct examination you felt Mr. Timmons could walk around as a night watchman and punch a timeclock and so forth?

"A  I think he could do that.

"Q  Let's go into a few more facts and say he had to be walking six hours of that time per day; do you think he could do this?

"A  Six hours on an eight-hour shift, or what?

"Q  Yes.

"A  That might be pretty fatiguing for him.

"Q  In other words, it wouldn't seem unusual to you, then, for him to get fatigued in walking any length of time?

"A  Yes, for any extended time. I think if he could walk and sit down for a while he would be all right, but I feel if he had to walk continuously several miles, or something like that, he would tire more rapidly."

The doctor's opinions are proper under Hartford Accident & Indemnity Co. v. Industrial Commission, 15 Ariz.App. 177, 487 P.2d 23 (1971).

Mr. Ross Lamoreaux, a rehabilitation counsel with the State Compensation Fund, testified that he was familiar with employment opportunities in the Phoenix area, that positions were continuously available for keypunch night watchmen; that such work was steady and did not require previous experience; that the work was available to handicapped persons, and that it required a forty hour week with pay of one dollar sixty cents to one dollar seventy cents per hour. Mr. Lamoreaux testified that the physical requirements of the job are as follows:

"A  This is a man who is primarily serving two purposes. He will admit people to the premises, let them out of it, have them sign a logbook so that their presence is recorded and their leaving, also. Normally once an hour he will tour the premises, punch the timeclock that he carries over his shoulder on the keys that are fastened to various parts of the building. This assures the fact that he did literally make the circuit of the place. Except for the time that he is actively walking around the building, he can sit, stand, lie down if he chooses. The only thing he is not permitted to do is go to sleep.

"Q  How much would the timeclock that he carries weigh?

**60**

* * * * * *

"A The only one I ever weighed weighed two pounds. How typical it is I don't know, except it's similar in size and shape to the others I've seen.

"Q How is this clock carried by the watchman?

"A On a strap that is slung over the shoulder.

"Q Is this keypunch watchman, does he work indoors or outdoors?

"A It's indoors. Now, there are such jobs outside, this is true, but most of them work inside."

Mr. Lamoreaux did indicate that he had not spoken with any particular prospective employer regarding petitioner.

Under Arizona Workmen's Compensation statutes, permanent unscheduled benefits paid the injured employee are based not on the percentage of physical disability resulting from the industrial injury, but rather on the reduction in earning capacity caused by the disability. A.R.S. § 23–1044, subsec. C. In Davis v. Industrial Commission, 82 Ariz. 173, 309 P.2d 793 (1957), our Supreme Court stated:

"The problem of determining the future earning capacity of a disabled man involves a certain amount of indefiniteness. The object is to determine as near as possible whether in a competitive labor market the subject in his injured condition can probably sell his services and for how much. To support a finding in this respect the commission must have evidence that will at least demonstrate the reasonableness of the determination made. There must be something that will justify the conclusion that he is able to perform the services which are used as a basis for measuring earning capacity." (82 Ariz. at 175, 309 P.2d at 795).

*See also* Shroyer v. Industrial Commission, 98 Ariz. 388, 405 P.2d 875 (1965); Cramer v. Industrial Commission, 19 Ariz.App. 379, 507 P.2d 991 (1973).

In our opinion the testimony of Dr. Barton, concerning petitioner's physical limitations, and the testimony of Mr. Lamoreaux, regarding the various job opportunities open to a person with petitioner's physical and education limitations, support the findings of the Commission.

Award affirmed.

JACOBSON, C. J., and HAIRE, J., concur.