541 P.2d 580

**EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, and M. M. Sundt Construction Company, Petitioners,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Charles W. Neitzelt, Respondent Employee.**

**No. I CA–IC 1284.**

Court of Appeals of Arizona, Division 1, Department C.

Oct. 23, 1975.

Rehearing Denied Nov. 26, 1975.

**118**

Lewis & Roca by Merton E. Marks, Phoenix, for petitioners.

Greg L. Folger, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Dean C. Christoffel, Tucson, for respondent employee.

## OPINION

WREN, Judge.

This appeal challenges an award of The Industrial Commission of Arizona finding that claimant had suffered a 100 per cent loss of earning capacity. We find that the evidence reasonably supports that finding and therefore affirm.

The claimant, Charles Neitzelt, sustained an industrial back injury on August 23, 1971 while working as a heavy equipment operator for petitioner employer, M. M. Sundt Construction Company. Prior to this injury, Neitzelt had a 10 per cent general physical functional impairment from two previous back injuries in 1961 and 1964.

Neitzelt filed a workmen's compensation claim for the August, 1971 injury which was accepted by respondent carrier, Employers Mutual Liability Insurance Company. He was admitted to Tucson General Hospital on October 6, 1971 and discharged October 15 with a final diagnosis of lumbar root irritation with trauma. Conservative therapy was prescribed. On April 14, 1972, Neitzelt was seen by Dr. John McCracken, who recommended a lumbar brace and an exploratory laminectomy. On April 19, 1972, a laminectomy was performed at L–4 on the left with disc

excision by Dr. Willard L. Brown and Dr. T. M. Skinker. Neitzelt was discharged from the hospital on April 29.

The attending physician, Dr. Brown, continued to treat Neitzelt and placed him in a chairback brace for several months. In his report of February 22, 1973, Dr. Brown stated that Neitzelt's condition was not yet stationary, and that any work he might do would be severely limited as to walking and standing, and would permit no lifting, bending or stooping.

Neitzelt was next examined on June 7, 1973 in group consultation by several physicians, who reported that no further treatment would be needed. Pursuant to this report, the carrier issued its Notice of Permanent Unscheduled Disability and terminated benefits effective June 25, 1973.

On April 26, 1974, The Industrial Commission issued its Findings and Award for Unscheduled Permanent Partial Disability finding that Neitzelt had sustained a 15 per cent physical functional disability and a 69.83 per cent loss of earning capacity. Both Neitzelt and the petitioners, Employers Mutual and M. M. Sundt, filed timely requests for a hearing which was held on September 6, 1974.

On September 26, 1974, the Decision Upon Hearing and Findings and Award for Reduction in Earning Capacity was issued finding that Neitzelt had sustained a 100 per cent loss of earning capacity. Petitioners' request for review, urging that the award was contrary to the evidence, was filed October 16, 1974. On November 20, 1974, the presiding hearing officer issued the Decision Upon Review affirming the award of 100 per cent loss of earning capacity.

Petitioners raise two issues on appeal: (1) whether Neitzelt sustained his burden of demonstrating a reasonable effort to secure employment and (2) whether the percentage loss of earning capacity is less than 100 per cent. Petitioners contend that the uncontroverted evidence proved that Neitzelt was able to perform the job of hoist operator and that that job was available in the Tucson area.

■ It is normally incumbent upon an injured workman, at a hearing to determine loss of earning capacity, to demonstrate a reasonable effort to secure employment in the area of his residence. Where testimony discloses that a reasonable effort was made, the burden of going forward with evidence to show the availability of suitable employment is on the employer and carrier. *Meadows v. Industrial Commission*, 12 Ariz.App. 114, 467 P.2d 954 (1970); *Schnatzmeyer v. Industrial Commission*, 77 Ariz. 266, 270 P.2d 794 (1954); *Timmons v. Industrial Commission*, 20 Ariz.App. 57, 510 P.2d 56 (1973); *Germany v. Industrial Commission*, 20 Ariz.App. 576, 514 P.2d 747 (1973). Here, however, Neitzelt admitted that he had made no effort whatsoever to seek employment, other than an application to and rejection by Vocational Rehabilitation in March, 1972, and this was prior to his back surgery and more than one year before his condition was found to be stationary. The question thus arises as to whether under the particular facts of this case Neitzelt can be excused for failing to seek employment.

Dr. Brown testified that Neitzelt could work only at a job that required no lifting, bending, or stooping, and permitted complete freedom to change positions. The doctor felt that at the time of the hearing, Neitzelt was capable of working four hours a day and could gradually increase that to an eight hour day over a six month period. Neitzelt's own testimony was that there was no work he could do for even four hours at the time of the hearing, and that he knew of no job he could qualify for in light of his age, experience, education, and present disability. He stated that he was completely disabled from performing any job he had held in the past. Prior to his injury, the record reflects that Neitzelt had had a good work history, and

the evidence did not contain any allegations of malingering.

■ In light of the severe work limitations placed on him by Dr. Brown, and his own knowledge of his physical inability to perform any work for a sustained time period, Neitzelt could reasonably believe that he was, at the time of the hearing, totally disabled from returning to work. Clearly he could not return to his former occupation, and, just as clearly, had no training for any type of employment beyond that of manual labor. These factors, coupled with his advanced age, lack of education and work experience created a convincing picture of total disability. He cannot be penalized for failing to seek employment which he could not reasonably be expected to perform.

Professor Larson has suggested a general principle for the burden of proof in such cases:

> "If the evidence of degree of obvious physical impairment, coupled with other factors such as claimant's mental capacity, education, training, or age, places claimant *prima facie* in the odd-lot category, the burden should be on the employer to show that some kind of work is regularly and continuously available to the claimant." 2 Larson's Workmen's Compensation Law § 57.61 p. 10–136 (1975).

An employee in the odd-lot category is defined as " '[a]n employee who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist.' " 2 Larson's Workmen's Compensation Law § 57.51 p. 10–107 (1975) cited with approval, *Phelps Dodge Corp., Morenci Branch v. Industrial Commission*, 90 Ariz. 379, 368 P.2d 450 (1962).

■ Absent proof of employment reasonably available to one in the odd-lot category, the injured employee may be classified as totally disabled. *Phelps Dodge Corp., Morenci Branch v. Industrial Commission*, supra.

■ We turn next to the question as to whether the employer and carrier met the burden of showing available and suitable employment in presenting evidence about possible employment as a hoist operator. The evidence reflected that such employment was available in the Tucson area less than 30 days a year. It was not shown that no bending would be required or that hoist operators were always free to change positions at will. Such evidence falls far short of that required to establish available and suitable employment. *See Dean v. Industrial Commission*, 24 Ariz.App. 214, 537 P.2d 599 (1975); *Germany v. Industrial Commission*, 20 Ariz.App. 576, 514 P.2d 747 (1973).

■ Viewing the evidence in the light most favorable to sustaining the award, *Malinski v. Industrial Commission*, 103 Ariz. 213, 439 P.2d 485 (1968); *Micucci v. Industrial Commission*, 108 Ariz. 194, 494 P.2d 1324 (1972), the finding that petitioner failed to establish suitable available employment in the Tucson area must be sustained. The finding of a 100 per cent loss of earning capacity by the hearing officer after consideration of the unavailability of employment, Neitzelt's age, education and training plus inability to return to his previous occupation or any job at all was reasonably supported by the evidence.

The award is affirmed.

NELSON, P. J., and STEVENS, J., Retired, concur.

NOTE: This matter was taken under advisement prior to Judge STEVENS' retirement.