560 P.2d 436

PHELPS DODGE CORPORATION and State Compensation Fund, Petitioners,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Cruz S. Mendoza, Respondent Employee.

No. 1 CA–IC 1343.

Court of Appeals of Arizona, Division 1, Department C.

Jan. 11, 1977.

Rehearing Denied Feb. 10, 1977.

Review Denied March 1, 1977.

Evans, Kitchel & Jenckes, P. C., by James G. Speer, Phoenix, Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix, for petitioners.

John H. Budd, Jr., Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Davis, Eppstein & Tretschok, by Robert W. Eppstein, Tucson, for respondent employee.

## OPINION

EUBANK, Presiding Judge.

This appeal presents the issues of the reliability of the testimony of an expert witness, and the hearing officer's discretion in refusing to grant a continued hearing.

Respondent sustained an industrial injury to his back on February 7, 1973, and was discharged a year later with a 15% general physical disability. On July 25, 1974, the Industrial Commission issued an award for an unscheduled permanent partial disability predicated upon a 65.91% reduction in monthly earning capacity. Both petitioner and respondent requested a hearing, and three hearings were held. Respondent, who was 62 at time of the hearings, testified, and he had three additional witnesses: Doctors Warren D. Eddy, Jr., and Christopher A. Guarino, both of whom were orthopedic surgeons, and Dr. Thomas Fisher, a psychologist and vocational rehabilitation specialist. Petitioner presented two witnesses:

Mr. McBride, the acting manager of the Douglas Multiservice Center, and Mr. Snider, the Labor Department Head of the Phelps Dodge Corporation.

On December 24, 1974, the hearing officer issued his award which found a 100% loss of earning capacity. Upon a request for review, the award was affirmed, and thereafter, review was taken to this Court. Petitioner claims that respondent did not make a reasonable and diligent effort to secure employment because he filed no employment applications, citing *Dye v. Industrial Commission*, 23 Ariz.App. 68, 530 P.2d 914 (1975). *Dye* does not stand for such a proposition; petitioner is quoting from the specially concurring opinion. The cases do require that a satisfactory effort to secure employment be made, and our review of the testimony satisfies us that a satisfactory effort was made by respondent when he went to his employer's Labor Department Head and inquired about the availability of light work. *Cf. Davis v. Industrial Commission*, 16 Ariz.App. 535, 494 P.2d 735 (1972). Under the circumstances of this case, we do not think that respondent's failure to make a formal application is of any special importance since it goes to the weight of his testimony, and was a question for the trier of fact.

Petitioner next argues that the testimony of Dr. Fisher, the vocational rehabilitation specialist, does not support the award, since his investigation of employment opportunities was predicated on physical disabilities to which the two physicians did not testify. We will consider this issue together with petitioner's suggestion that the award was without reasonable support in the evidence.

Dr. Eddy clearly established physical limitations on respondent's activity:

I would have anticipated at the time of his discharge that he could probably do watchman work. His subsequent—my subsequent observations of him have made me somewhat doubtful of this; not that he couldn't perform the duties of a watchman which would imply to me anyway that it was just a matter of walking, checking locks and checking in the time

clock and things like that, but it would appear that he needs more rest than a constant shift would allow him.

In other words, I doubt that he could sustain a full eight hours on his feet without a period of rest and substantial rest necessary at that time. He has a condition which is called arthritis, osteoarthritis of his back which is expectedly a progressive problem which tends to get along reasonably well at rest but responds very poorly to activity. And as I stated before it is very difficult to quantitate the amount of work that he can perform, but it's my opinion that this man is a—that is, based on my observation of him for over a year, it is approximately a year, he has been a very sincere man who has never given me any reason that what he has done is make a sincere effort to do what we have asked him to do.

Q I believe you testified that the last time he saw you, either the time before or the last time he saw you, that you advised him that when he has this aggravation of pain that is when it gets to be to the point where it really bothers him; that about the only thing he could do is lie down and stay in bed until he is better and then do what he can do; is that correct?

A That is correct.

Q Do you expect this situation will continue as far as needing days where he is down and needing rest in order to be able to get into activities again?

A Yes.

\* \* \* \* \* \*

Q (By Mr. Eppstein) Doctor, can you tell us if he does return to—if he does try to do some type of light duty work where he can spend part of the time on his feet and part of his time sitting down, part of his time walking short distances, whether you will expect that even with this type of work there will be periods of time when he will be off work for several days at a stretch?

A I would say that probably if he had a job like that he could do it without

particularly being off for a long period, several days at a stretch. Maybe I would rather put it as maybe an occasional day of rest he may need under those circumstances, kind of playing it by ear, working, walking, standing, sitting as he is kind of allowed to do.

Q Would such a job require that he sort of be able to use his own discretion as to when he needs the rest and when he can walk and when he can't?

A To a large extent, yes.

Q How about a job that involves sweeping, such as janitorial work?

A Well, that is not very kind to a back if it is a prolonged thing. Occasionally sweeping certainly wouldn't bother him, but if that were his primary job it would be very difficult.

Q I believe he testified that he had trouble picking things up off the floor. In fact, he said he couldn't very well pick things up off the floor. Do you have any comment on this from a medical viewpoint?

A His condition would necessarily obviate stooping. And at his age squatting is not a reasonable substitute.

However, it is important to note the following comment made by Dr. Eddy:

Q Could you give us a list of activities—I am not talking about jobs now, but physical activities that you believe would—this man would be limited in?

A I don't think I understand the question.

Q Well, you mentioned, for example, repeated bending; would you give us a list of activities and perhaps, if you can estimate the time that he could engage in any of these activities. If you believe that this would be mostly up to the Applicant then say so and we will handle it from there.

A I can't look at him and say and quantitate his activity very well. We have to take an awful lot of this on trusting the individual. That is all. I don't think there is any possible way of measuring it. I am just merely saying

that I think his symptoms are credible and I think he in general is credible.

Furthermore, the hearing officer is not required to ignore a claimant's testimony, *Henning v. Industrial Commission*, 15 Ariz.App. 558, 489 P.2d 1260 (1971), but he must interpret it in light of the medical evidence which is presented. By his remark, Dr. Eddy effectively indicated to the hearing officer that respondent's own testimony about his physical symptoms was credible from a medical standpoint. Therefore, we hold that respondent's testimony can provide substantiation for Dr. Fisher's assumptions about respondent's physical condition.

Dr. Fisher's understanding of respondent's physical condition—and the physical symptoms which Dr. Fisher described to prospective employers—was as follows: respondent could sit for a half hour at a time and must move frequently; respondent could stand for a half an hour and must shift his feet frequently; he bends slowly and with effort only to eight inches off the ground; he walks a slow gait and could cover a block in seven minutes; he can lift ten pounds or less; he cannot lift a normal bag of groceries; he has a limitation in his right arm; it is not certain whether respondent can carry anything; respondent's balance is not good; his legs give way; he needs a cane; he does not have much strength or endurance; he has difficulty in holding and opening a small bottle; he must be in bed two to three days several times a month when the pain becomes excruciating.

Furthermore, Dr. Fisher testified concerning his observations of respondent:

Mr. Mendoza had extreme difficulty getting up and down. He moved with a very slow gait. His speech pattern was slow. At times it was necessary to repeat questions two, three times before he understood exactly the information that was asked of him. He had to shift while standing on his feet. In other words, he couldn't sit still for maybe more than ten or fifteen minutes without getting up, getting down, changing positions. He

was constantly in movement even when he was sitting down.

Quoting this section in his findings and award, the hearing officer said:

That said observation is consistent with that of the undersigned who observed the applicant at the industrial hearing convened October 25, 1974 as well as the industrial hearing on November 12, 1974 and who has observed the applicant in excess of two hours.

We have carefully reviewed all of the medical testimony and all of the respondent's testimony, and we are satisfied that Dr. Fisher's presentation of respondent's physical condition was consistent with the evidence. There were several minor inconsistencies between the doctors' testimony and respondent's testimony, but, because of the subjective nature of the disability and the general nature of all of the testimony, considered together with Dr. Eddy's hesitance to quantify respondent's disability and the doctor's belief in the credibility of respondent's complaints, we hold that these inconsistencies are insignificant. Moreover, the evidence is more than adequate to sustain the award. *In re Estate of Bedwell*, 104 Ariz. 443, 454 P.2d 985 (1969).

Petitioner also argues that Dr. Fisher testified about matters outside his field and that he improperly expressed opinions about the intimate question of fact at issue.

■ The hearing officer must determine the qualifications of all expert witnesses, *cf. Allied Van Lines v. Parsons*, 80 Ariz. 88, 293 P.2d 430 (1956), and Dr. Fisher was determined to be a vocational rehabilitation expert. His testimony related to his field of expertise. Having qualified as an expert, Dr. Fisher then was able to express opinions about the ultimate facts in dispute. *Cf. State v. Keener*, 110 Ariz. 462, 520 P.2d 510 (1974).

■ Therefore, the medical evidence and the evidence of respondent about his efforts to secure employment, satisfied respondent's burden as claimant, and shifted the burden of going forward with the evidence to show the fact of available suitable employment to petitioner. *Meadows v. Industrial Commission*, 12 Ariz.App. 114, 467 P.2d 954 (1970); *Davis v. Industrial Commission*, supra. Petitioner presented the testimony of Mr. McBride about employment available in the Douglas area, but the hearing officer rejected this testimony because of its failure to link respondent's physical limitations to the physical requirements of the jobs. Thus, when McBride's testimony was compared to the detailed vocational analysis of Dr. Fisher, the hearing officer held that petitioner had failed to meet its burden. This conclusion will not be disturbed. *Malinski v. Industrial Commission*, 103 Ariz. 213, 439 P.2d 485 (1968). *See also Dean v. Industrial Commission*, 113 Ariz. 285, 551 P.2d 554 (1976).

Additionally, in an opinion by this Court affirming an award of 100% loss of earning capacity, we held that an employee could not be penalized for failing to seek employment in light of his disability and the resultant work limitations placed on him by his doctor. *Employers Mutual Liability Insurance Company of Wisconsin v. Industrial Commission*, 25 Ariz.App. 117, 541 P.2d 580 (1975). This case *sub judice* is very similar on the facts.

Finally, petitioner argues that the hearing officer abused his discretion in refusing to grant continued hearings so that petitioner could (a) counter the "surprise" and "hearsay" testimony of Dr. Fisher, and (b) introduce evidence of a job which had become available.

Under Rule 56, Rules of Procedure for Workmen's Compensation Hearings before the Industrial Commission of Arizona, the granting of such continued hearings is discretionary with the hearing officer.

■ The fact that the nature of a witness' testimony is based upon hearsay goes to the weight of the testimony rather than to its admissibility. *Germany v. Industrial Commission*, 20 Ariz.App. 576, 514 P.2d 747 (1973). Therefore, Dr. Fisher's testimony was not infirm on this ground, and it was no abuse of discretion for the hearing officer to refuse to grant a continued hearing on this ground.

Nor was Dr. Fisher a "surprise" witness, since a letter from the hearing officer dated October 21, 1974, stated that Dr. Fisher would testify about jobs considered fit for respondent and their reasonable availability. We do not think it significant that Dr. Fisher testified before petitioner's employment expert.

At any event, petitioner stated his objection to Dr. Fisher's testimony only in terms of Fisher's "opinions and conclusions as to the ultimate facts in this case" and his lack of qualifications. We already have considered these issues and have found no error. Therefore, no continued hearing was required for these reasons.

Petitioner also requested a continued hearing in order to present testimony that a changing room job had become available. The motion was filed over a month after the final hearing and while the hearing officer was undertaking to make his decision. The hearing officer properly refused to grant the hearing.

The award is affirmed.

NELSON and SCHROEDER, JJ., concurring.