589 P.2d 1

Charles A. WIEDMAIER, Petitioner,

v.

The INDUSTRIAL COMMISSION of
Arizona, Respondent,

Golden Heritage Corporation,
Respondent Employer,

Industrial Indemnity Company,
Respondent Carrier.

No. 13672–PR.

Supreme Court of Arizona,
In Banc.

Dec. 12, 1978.

Rehearing Denied Jan. 16, 1979.

128

Harlan J. Crossman, Phoenix, for petitioner.

John H. Budd, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Lewis & Roca by Merton E. Marks, James B. Long, Phoenix, for respondents employer and carrier.

CAMERON, Chief Justice.

This is a petition for review of a memorandum decision of the Court of Appeals, No. 1 CA–IC 1702, filed 27 January 1978. We have jurisdiction pursuant to Rule 47(b), Rules of the Supreme Court, 17A A.R.S.

We are called upon to decide but one question on appeal: Does the evidence support the hearing officer's findings and award that suitable employment is not available due to economic conditions?

The facts necessary for a resolution of this matter are as follows. The respondent-claimant received an industrial injury in the course and scope of his employment as a carpenter with Golden Heritage Corporation in August of 1973. His claim for benefits was originally accepted by the carrier, Industrial Indemnity, and his average monthly wage was then determined to be in excess of the statutory maximum [A.R.S. § 23–1041(E)] of $1,000. A herniated lumbar disc was removed and petitioner was awarded a 5% general physical functional disability based on the limitation of the amount of weight he could lift, but no loss of earning capacity was found. The claimant made a good faith effort to obtain employment but was unsuccessful. A hearing was held at claimant's request concerning the finding that he had suffered no loss of earning capacity.

The Decision Upon Hearing and Findings and Award for Permanent Partial Disability Compensation Benefits found:

"11. After viewing the evidence in its entirety, both medical and non-medical, it is found that the permanent residuals of applicant's industrial injury of August 17, 1973, preclude his returning to work in his former capacity of a trim (finish) carpenter or transferring to employment as a framing (rough) carpenter, on a full-time basis, in the construction industry. "12. * * * it is found that the permanent residuals of applicant's industrial injury would not preclude him from performing the duties of a home repair serviceman on a full-time basis and that his many years of experience in construction carpentry would make him highly qualified in this occupation. In 1973 positions in this occupation paid from $4.72 to $5.69 per hour. Openings in this field in the area of applicant's residence are presently scarce but the scarcity is due to economic conditions in the construction industry, and it is therefore found that under normal economic conditions applicant could likely find suitable employment in this field."

The hearing officer then found that the job of home repair serviceman would pay between $755 and $890 per month. This amount was evidently averaged to $866 a month and claimant was found to have suffered a loss in earning capacity of $134 per month ($1,000 minus $866 = $134) with an award of $73 per month (55% of $134) pursuant to A.R.S. § 23–1044(C).

The workman brought a special action in the Court of Appeals which set the award aside in a memorandum decision. The employer and carrier petitioned this court for review which we granted.

■ After a workman has received an unscheduled injury and the percentage of permanent disability has been determined,

if suitable work that he can do in his disabled condition is not available in the area where the workman resides the measure of workman's loss of earnings is the salary he received before the injury. The workman has an obligation, however, to take such work as he is able to perform and is available in order to mitigate the amount of compensation that may be due him. *Timmons v. Industrial Commission*, 20 Ariz. App. 57, 510 P.2d 56 (1973). Not only does this reduce the amount of benefits that must be paid, but usually has a beneficial rehabilitative result as far as the injured workman is concerned. If suitable work is available and the workman refuses to take the job, the carrier must pay only an amount based upon what he would have received had he accepted the work available.

■ Where the workman shows he has made a good faith effort to obtain employment and that none is available, the carrier may show that the inability of the workman to obtain employment is not due to the workman's physical condition, but due to the fact that economic conditions are such that no jobs are available. See dissent of Chief Justice Phelps, *Schnatzmeyer v. Industrial Commission*, 77 Ariz. 266, 270 P.2d 794 (1954). This follows the intent of the Workman's Compensation Act that the workman should be compensated for loss of earning capacity only. Cf. *Alsbrooks v. Industrial Commission*, 118 Ariz. 480, 578 P.2d 159 (1978). Where there are no jobs available because of economic conditions, the workman is not prevented from obtaining work because of his physical impairment. He would not be hired regardless of his physical condition. Therefore, he has suffered no loss of earning capacity because of his industrial injury.

Problems arise when both the injury and economic conditions operate together to deny a willing workman employment. In *Matlock v. Industrial Commission*, 70 Ariz. 25, 215 P.2d 612 (1950) we stated:

"In this case, the record discloses that petitioner's failure to obtain employment was caused partly by his disability, and partly by economic conditions. Under these circumstances, it is then the duty of the commission, within a reasonable time thereafter to determine what wage the applicant could earn if a job suitable to his condition were available, taking into consideration the factors enumerated in section 56–957(d), supra. His loss of earning power, then, would be the difference between the wages he was earning at the time of his injury and the wages the commission determines he could earn at the work he is able to do at the time of the award regardless of whether or not he is able to obtain work." 70 Ariz. at 30, 215 P.2d at 615.

Matlock failed to recognize the many subtle forces at work in the employment market. The disabled workman is frequently the last hired and the first fired. It is then difficult if not impossible to determine whether his failure to obtain employment was the result of his disability or was due to economic conditions. The rule in *Matlock* which resolved the doubt against the workman was a harsh and unjust rule and was criticized at the time as such. See 2 Larson's Workmen's Compensation Law, § 57.-63.

We later stated:

"The formula announced in the *Matlock* case taken literally is too rigid and inelastic. The correct rule is that announced in *Ossic v. Verde Central Mines, supra,* that in determining percentage of disability it is the Commission's duty to consider whether and to what extent his disabilities prevented employment. The *Matlock* case does not permit the Commission to consider partial injury-produced unavailability of work. To this extent it is disapproved. We are not unmindful of the difficulties confronting the Commission when it feels impelled from the evidence to find several contributing causes of unemployment, one of which is the disability, but it is equally difficult to accurately give the proper weight to other factors which the law requires to be considered." *Schnatzmeyer, supra,* 77 Ariz. at 220–21, 270 P.2d at 797.

■ Our previous cases from *Ossic* to *Matlock* to *Schnatzmeyer* have not been models of clarity and may have resulted not only in uneven application of the law, but may have also placed upon the Commission the almost impossible task of weighing the disability of the injured workman, the availability of employment, and changing economic conditions. We believe the better rule (and the one easier to apply) is that enunciated by the New York courts:

" * * * While reduced earnings caused solely by economic conditions preclude an award, if a claimant's disability causes or contributes to the reduced earnings then an award may be made. * * * " *Finocchio v. W. A. White Underwear Corp.,* 404 N.Y.S.2d 1011, 1012 (1978).

We therefore hold that previous cases to the contrary, before economic conditions can defeat or reduce compensation to an injured workman, the carrier or employer has the burden of showing that such economic conditions are the sole cause of the workman's inability to gain employment. Where the workman's disability combines with economic conditions to deny the workman employment, the Commission may not consider economic conditions in determining the workman's loss of earnings.

■ The burden of proof is on the injured workman to show that he is entitled to compensation. *Standard Accident Insurance Co. v. Industrial Commission,* 66 Ariz. 247, 186 P.2d 951 (1947); *Corr v. Industrial Commission,* 16 Ariz.App. 12, 490 P.2d 841 (1971). Once the injured workman has shown that his injury prevents him from returning to his former occupation and that he has made a reasonable effort to find other work, then the burden of going forward with the evidence shifts to the employer. *Phelps Dodge v. Industrial Commission,* 114 Ariz. 252, 560 P.2d 436 (App. 1977); *Dean v. Industrial Commission,* 113 Ariz. 285, 551 P.2d 554 (1976); *Employer's Mutual Life Insurance Company v. Industrial Commission,* 25 Ariz.App. 117, 541 P.2d 580 (1975); *Germany v. Industrial Commission,* 20 Ariz.App. 576, 514 P.2d 747 (1973); *Meadows v. Industrial Commission,* 12 Ariz. App. 114, 467 P.2d 954 (1970).

The carrier contends, however, that our decision in *Whyte v. Industrial Commission,* 71 Ariz. 338, 227 P.2d 230 (1951) dictates that a showing of unavailability of employment due to economic conditions alone will satisfy its burden of going forward. We do not agree. In *Whyte, supra,* we were asked to determine when the average monthly wage of the claimant before and after the injury should be determined. This court held that the proper basis for computation was the difference between the average monthly wage earned before the injury and the average monthly wage that could have been earned immediately thereafter. 71 Ariz. at 345, 227 P.2d at 234. We do not believe that *Whyte, supra,* is applicable.

■ In the instant case, the carrier did not sustain its burden of showing that claimant's inability to obtain work was due solely to economic conditions.

Award set aside.

STRUCKMEYER, V. C. J., and HAYS and GORDON, JJ., concur.

HOLOHAN, Justice, specially concurring.

From my review of the record in this case, the hearing officer and the carrier both realize that economic conditions must be the sole cause of the workman's inability to secure gainful employment. The confusion in this case arises in the same area as that covered in *Dean v. Industrial Commission,* 113 Ariz. 285, 551 P.2d 554 (1976). It is in this regard that the carrier failed to sustain its burden of showing that not only was there employment which the claimant could do, but that there was a market or availability which was temporarily unavailable solely due to economic conditions.

The record shows that the claimant made a showing of an effort to obtain employment but was unsuccessful. The carrier through surveillance film taken by its agents, showed that the claimant was in fact capable of working, and the carrier presented evidence of some four or five occupations which the claimant could do. Each occupation would make use of his

former skill as a carpenter, and some of the employers surveyed indicated that the claimant's condition would not preclude employment if there were openings. Thereafter the claimant himself offered evidence of skills in which he could be employed, but the wage scales and hours available were much less than those occupations offered by the carrier.

There was also another very real difference between the occupations suggested by the carrier and that suggested by the claimant—employment availability. The carrier's suggested positions were not available, but there was work available in the claimant's suggested occupation. The carrier argued that the nonavailability was due to economic conditions.

The claimant contends that there were factors other than general economic conditions involved in his inability to secure employment in the suggested occupations. The fact of the matter was that there were no openings in the field. One of the employers in the field suggested by the carrier had not hired anyone in two years.

The hearing officer accepted the evidence of the carrier, and he adjusted the loss in earning capacity to reflect the difference between the earnings before the accident and the earnings which could have been made from one of the occupations suggested by the carrier.

Although the evidence must be viewed in the light most favorable to sustaining an award, *Micucci v. Industrial Commission,* 108 Ariz. 194, 494 P.2d 1324 (1972), the evidence must demonstrate the reasonableness of the commission's determination. *Dean v. Industrial Commission, supra.* Implicit in the *Dean* case is the requirement that employment availability be a reality before the earnings of any given employment may be used to reduce the amount of loss in earning capacity. Economic conditions may cause temporary unavailability of employment, and such conditions do not preclude the consideration of the wages for suitable employment which would be available to the claimant except for the current economic conditions.

In the case at issue, the hearing officer concluded that the claimant could likely find suitable employment in the field under normal economic conditions. The Court of Appeals pointed out in its memorandum decision that there was not sufficient evidence presented to meet the standard of reasonableness. *See Germany v. Industrial Commission,* 20 Ariz.App. 576, 514 P.2d 747 (1973). The appellate court concluded that the carrier had failed to present evidence that there was employment reasonably available to the claimant in the occupation selected by the hearing officer.

Upon review this court has concluded that the carrier did not sustain its burden in showing that claimant's inability to obtain work was due solely to economic conditions. From the holding of the court I have concluded that this is another way of saying what the Court of Appeals originally held— that the carrier had not met its burden of going forward with the evidence showing the availability of suitable employment.