731 P.2d 641

**Edward J. PENNELL, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Emergency & Military c/o Payroll, General Accounting Office, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 3405.**

Court of Appeals of Arizona, Division 1, Department D.

Jan. 13, 1987.

Alston, Edwards, Novak & Pillinger, P.C. by Cecil A. Edwards, Jr., Phoenix, for petitioner.

Dennis P. Kavanaugh, Chief Counsel, Phoenix, for respondent The Indust. Com'n of Ariz.

Robert K. Park, Chief Counsel, State Compensation Fund by Robert F. Retzer and Teri Thomson, Phoenix, for respondent employer and respondent carrier.

## OPINION

HAIRE, Judge.

On this review of an Industrial Commission award denying temporary partial disability benefits, we must decide whether the award complies with the special statute governing workers' compensation benefits for members of the Arizona National Guard.

The petitioner (claimant) has been a member of the Arizona National Guard since 1981. He was assigned to a military police unit and normally worked one weekend per month. The pay for this normal duty was $140.00. In addition, the claimant was subject to mobilization during an emergency. *See generally* A.R.S. § 26–172(A). When not serving the Guard, he worked as a carpenter.

In September 1983, the National Guard was mobilized to assist flood victims in the Prescott area. The claimant was sent from Phoenix in an open jeep during a severe storm. After this exposure, he developed a high fever, nausea, and diarrhea. While hospitalized for acute gastroenteritis, he suffered a seizure, during which he fell and fractured several vertebrae.

The respondent carrier, the State Compensation Fund (Fund), accepted the compensability of the illness, the seizure, and the fractures. It also recommended an average monthly wage of $1,133.40.[1] The Commission subsequently issued an average monthly wage determination adopting this recommendation. *See generally* A.R.S. § 23–1061(F). This determination became final without protest by the Fund or the claimant.

The Fund paid temporary total disability benefits based on 66⅔% of this average monthly wage. In February 1984, the claimant was released to light work. This

status allowed him to return to regular National Guard duty as a military policeman one weekend every month but did not permit him to return to carpentry. After this release, the claimant returned to his regular weekend Guard duty as a desk sergeant earning $140.00 per month. He also unsuccessfully sought other light work.

The Fund then issued a notice of claim status changing the claimant's benefit status from temporary total to temporary partial. The claimant accepted this change, but when the Fund discontinued all temporary partial disability benefits, he requested that the Commission investigate the failure of the Fund to pay compensation benefits that he claimed he was entitled to receive. *See generally* A.R.S. § 23–1061(J). A hearing was subsequently scheduled and conducted. After the parties submitted legal memoranda, the administrative law judge issued an award. The dispositive findings state:

"9. ... In the instant case, the undersigned Hearing Judge is persuaded by the insurance carrier's appeal that the provisions of *A.R.S.* § 23–901 5 (i) [sic] *set the applicant's average monthly wage 'at an artificially high level'* and that on the basis of applicant's working but one weekend monthly, at no time would he ever be in a position to earn sums equal to or in excess of his average monthly wage at the time of injury. *See Matter of Compensation of Bold,* 60 Or. App. 392, 653 P.2d 1001 (1982).

"10. In the present case, the undersigned Hearing Judge is persuaded by the reasoning in *Matter of Compensation of Bold, supra,* and the evidence clearly established that applicant returned to his 'regular work' as a military policeman with the Arizona National Guard and in that position was earning sums equal to or in excess of any amount that he had earned or would ever be able to earn as a National Guardsman; and applicant is therefore not entitled to pay-

1. The recommended average monthly wage is based on claimant's National Guard base pay

rate of $888.60 per month with additional board and lodging of $244.80 per month.

ment of temporary partial disability compensation benefits after January 27, 1984 (the date on which he was released by his treating physicians to return to his duties as a National Guardsman)." (Emphasis added).

Accordingly, the award denied additional temporary partial disability benefits. After affirmance on administrative review, the claimant sought review by this court.

On review, the claimant seeks temporary partial disability benefits based on the difference between the amount of the average monthly wage determination ($1,133.40) and his current earning capacity. The Fund denies that claimant is entitled to any additional temporary compensation because he has returned to his regular work in the Guard and is earning the same salary at that job as he earned prior to the injury.

In the ordinary case this conflict would not arise because an average monthly wage determination is normally based on the claimant's previous wages in the same or similar employment. *See* A.R.S. § 23–1041; *e.g., Davis v. Industrial Commission,* 134 Ariz. 293, 296, 655 P.2d 1345, 1348 (App.1982). This, however, is not an *ordinary* case. A special statute governs the compensation of a member of the Arizona National Guard. *See* A.R.S. § 23–901(5)(j). Under it, subject to conditions and exceptions that do not apply to the current case, Guard members are state employees covered by Arizona workers' compensation law at the following benefit levels: "Compensation benefits shall be based upon *the monthly military pay rate to which the member is entitled at the time of injury, but not less than a salary of four hundred dollars per month,* nor more than the maximum provided by the workers' compensation law." *Id.* (Emphasis added).

The above-quoted special statute, as found by the administrative law judge, does indeed set the average monthly wage

of a Guard employee at an "artificially high" level. That artificially high level in this case was $1,133.40, even though claimant's actual pre-injury Guard earnings were only $140.00 per month. Under A.R.S. § 23–1044(A), a claimant's benefits for temporary partial disability are fixed at 66⅔% of the difference between the claimant's average monthly wage "and the wages which the [claimant] is *able to earn thereafter.*" [2] Therefore, applying the language of the statutes, claimant in this case would be entitled to compensation in the amount of 66⅔% of the difference between $1,133.40 and $140.00 (the amount which under the evidence claimant was able to earn when he reached a temporary partial disability status).

The Fund does not contend that the final average monthly wage determined in this case was not correctly fixed in accordance with the special statute, and in fact paid claimant benefits amounting to 66⅔% of that average monthly wage while the claimant was temporarily *totally* disabled. But the Fund asserts that once the disability status changed to temporary *partial* and the claimant returned to weekend Guard duty, the artificially high average monthly wage was no longer applicable. The primary authority asserted for this result is *Matter of Compensation of Bold,* 60 Or.App. 392, 653 P.2d 1001 (1982).

In *Bold,* the claimant was a teacher who normally worked as a welder during the summer. He was injured while teaching, and after a period of temporary total disability, returned to his regular work as a teacher. He, however, claimed to be unable to work as a welder during the summer, and on that basis sought additional temporary *total* disability benefits. The claim was administratively denied because the claimant was able to perform his "regular work" as a teacher during the summer although he normally worked as a welder. *Bold,* 653 P.2d at 1001. On appeal, this

2. *See* A.R.S. § 23–1041(A):

"A. Every employee of an employer within the provisions of this chapter who is injured by accident arising out of and in the course of employment, or his dependents in event of his death, shall receive the compensation fixed in this chapter on the basis of such employee's average monthly wage at the time of injury."

denial was affirmed simply because the claimant's return to any gainful employment defeated his claim for total disability benefits. *Id.*, 653 P.2d at 1002.

*Bold* does not support the Fund's position. The primary and dispositive distinction is that *Bold* concerned Oregon's general compensation law. There was no special statute governing the compensation of teachers. In contrast, the current case involves a special statute governing the compensation of members of the Arizona National Guard.

The Fund urges that a literal interpretation of the statute is absurd, contending that if the statutory measure continues to apply despite the claimant's return to weekend Guard duty, then claimant could receive temporary partial disability benefits even if he were unconditionally released to return to work.

█ In general, we interpret a statute to mean what it plainly states. *E.g., Howard P. Foley v. Industrial Commission*, 151 Ariz. 522, 524, 729 P.2d 326, 328 (App.1986). One exception to this general rule applies if this interpretation is absurd. *See, e.g., Sunstate Equipment Corp. v. Industrial Commission*, 135 Ariz. 477, 479, 662 P.2d 152, 154 (App.1983). We disagree, however, that this exception applies to this case.

█ The Fund's argument ignores the fundamental principle that temporary partial disability benefits are a function of lost earning capacity. *See e.g., Western Cable v. Industrial Commission*, 144 Ariz. 514, 518, 698 P.2d 759, 763 (App.1985). Post-injury earning capacity itself is based on employability in general, not simply on employability in the pre-injury occupation. See 2 A. Larson, *Workmen's Compensation Law* § 57.22(b) (1986); *cf. Hunter v. Industrial Commission*, 130 Ariz. 59, 633 P.2d 1052 (App.1981) (industrially related disease that prevented claimant from returning to prior employment constituted impairment, but entitlement to permanent disability benefits depended on lost earning capacity in general). Consequently, if the claimant were released without restric-

tions, then his earning capacity would include his civilian job. Furthermore, the claimant would have the *capacity* to earn active duty pay because his inability to actually earn this pay would be totally unrelated to the industrial injury. *Cf. Wiedmaier v. Industrial Commission*, 121 Ariz. 127, 589 P.2d 1 (1978) (if economic conditions are the sole cause of unemployment, then there is no right to an award for lost earning capacity). This rule is inapplicable to the current case because the claimant's industrially related restrictions contribute in part to his incapacity. *Cf. id.*, 121 Ariz. at 130, 589 P.2d at 4.

In our opinion the literal interpretation which we give to this statute is in accord with our perception of the legislative intent in enacting it. The Arizona National Guard draws members from disparate occupations. While serving the Guard, the members are exposed to uncommon risks of injury. General compensation law, however, would exclude unrelated civilian earnings from the average monthly wage computation. *See, e.g., Wesolowski v. Industrial Commission*, 99 Ariz. 4, 6, 405 P.2d 887, 888 (1965). Thus, while Guard members are exposed to an increased risk of injury, under ordinary workers' compensation principles they would be restricted to compensation based on part-time wages. A.R.S. § 23–901(5)(j) represents a policy determination by the legislature to ameliorate this risk of destitution.

We therefore conclude that the award disregards the statutory measure of compensation. The claimant is entitled to temporary partial disability benefits based on the difference between the average monthly wage determination and his actual earning capacity during the periods in question.

The award is set aside.

EUBANK, P.J., and GRANT, J., concur.