178 P.2d 554

MIAMI COPPER CO. v. SCHOONOVER
et al.

No. 4925.

Supreme Court of Arizona.

March 24, 1947.

240

Morris & Malott, of Globe, for petitioner.

H. S. McCluskey, of Phoenix (John R. Franks, of Phoenix, of counsel), for respondent Industrial Commission.

UDALL, Judge.

Miami Copper Company has brought this matter here by writ of certiorari to have reviewed an award made May 15, 1946 by the Industrial Commission to one Isham H. Schoonover. The Commission granted the Company a rehearing but on July 11, 1946 entered its decision affirming the original award.

The facts are not in dispute and can be briefly stated. Schoonover had been in the employ of the Company since August 26, 1942. He was injured in an accident on March 6, 1946, as a result of which he suffered a temporary total disability for 35 days. The Commission was the insurance carrier for the Company. The employee at the time of the accident had a job classification of "timber helper" with a guaranteed base wage of $6.82 per day. During the thirty days immediately preceding the accident the employee, by his own efforts, earned a total of $356.35, of which amount $180.73 represents the guaranteed base wage and $175.60 were his contract earnings in excess thereof. The Company followed the not unusual policy of making incentive bonus payments over the base pay under individual contracts with certain of its workmen. The terms were that some employees, including Schoonover, agreed to perform certain specified work and labor for certain contract prices. However if employee's production fell below the standard agreed upon he was to receive a guaranteed wage of $6.82, irrespective, this being the standard wages paid for similar work to other employees of his class who were not working under contract (only 25% of the Company's underground employees worked under individual contract, the other 75% received the stipulated wage). Where as here the compensation earned by the employee under the contract exceeded the guaranteed base wage, the employee was paid the full contract price for the work performed.

The Commission based its award to this injured employee on the basis of his total contract earnings for the preceding thirty days whereas the Company contends that the award should have been based only upon the amount earned by the employee under the guaranteed base wage during the same period. The sole question for our determination is which measure of compensation is the correct one to apply in this case.

The controlling statutory provision is sec. 56-952, A.C.A.1939. The first two sentences of this section provide that employees or dependents will receive the compensation fixed "on the basis of average monthly wage at the time of injury" and that "The term 'monthly wage' shall mean the average wage paid during and over the month in which such employee is killed or injured." However, these general provisions are qualified with respect to work performed under certain types of contracts such as the one under which injured employee in this case was working. The last sentence of this section reads: "* * * If the employee is working under a contract by which he is guaranteed an amount per diem or per month, notwithstanding the contract price for such labor, then said employee or his subordinates or employees working under the terms of such contract, or his or their dependents in case of death, shall be entitled to receive compensation on the basis *only* of the guaranteed wage as set out in said contract of employment, whether paid on a per diem or a monthly basis, but in no event shall the basis be less than the wages paid to employees for similar work not under contract." (Emphasis supplied.)

We had occasion to construe this section of the code in the case of Kennecott Copper Corp. v. Industrial Commission (Jaime case) 61 Ariz. 387, 149 P.2d 687, on a factual situation that was identical with the present case, i. e. where we had both a guaranteed base wage and a contract price. We there held that the Legislature in language that was "clear, unambiguous and unequivocable" had fixed the basis for an award of compensation on the "guaranteed wage."

The Commission now advances two reasons why this ruling should no longer be followed. First they say we departed from it in a later decision rendered in the case of Barron v. Ambort, 64 Ariz. 209, 167 P.2d 925. Such a contention is untenable being based on a misconstruction of our decision by the Commission. The facts there were distinguishable as not only the injured employee, but all of the employees of the dairy company were being paid a flat $75 per month, plus four per cent commission on all sales. No evidence was introduced showing wages paid for similar work to employees not under contract. Thus there was no guaranteed wage payable "notwithstanding the contract price". We then held that the last sentence of the code provision, quoted above, relating to computation of compensation on basis of guaranteed wage, can be applied only upon showing a concurrence of a guaranteed wage and a standard of wage paid to employees for similar work who are not being employed under contract. We found in that case that the contract earnings and the guaranteed wage were identical and that the injured employee should be compensated on the basis of his entire earnings because the qualifying specific provision of the last

sentence of sec. 56-952, quoted supra, had no application to such a state of facts.

Secondly, the Commission says that there are some new factors introduced into this case that were not involved in either the Jaime case, or the Barron case, supra, i. e. that the Federal Government has occupied the field in this matter, and that the overriding Federal legislation, under the interstate commerce clause of the Constitution, controls. It argues that the basic collective bargaining agreement between the C. I. O. and the Company (which includes the individual bonus or incentive contract under which Schoonover worked) is made pursuant to the Wagner Act, the Wage Stabilization Act, the Fair Labor Standards Act, and the Wage and Hour Law, 29 U.S.C.A. §§ 151 et seq., 201 et seq., and that because the employees of the Company are engaged in interstate commerce, the Federal law and Federal Court interpretations thereof must control as to the nature and character of the compensation or remuneration paid. If rights under those Acts were here involved, unquestionably the extra wages or remuneration earned by the employee as a result of his personal efforts would constitute a part of his average monthly wage.

The Company maintains that a clear distinction exists between wages earned by the employee for work done, which admittedly are controlled by Federal statutes, and compensation paid because of an injury received, which is governed by the Arizona statute. No issue is here presented, nor could it be, that the Company has in any respect failed to comply with all of the Federal acts above enumerated. Certainly Federal enactments would control where any violations of those laws were involved. One of the cases cited by the Commission in support of their claim that the Federal law controls was Fleming v. A. H. Belo Corp. 5 Cir., 121 F.2d 207, where the only question involved was the amount of remuneration required to be paid an employee for personal services performed under federal laws.

The Federal Government has moved into the field of minimum wages and maximum hours where employees are engaged in interstate commerce. It has not moved into the field of disability compensation. The Arizona Workmen's Compensation Law, Code 1939, § 56-901 et seq., is clearly within the field of permissible state legislation under its police power. Ocean Accident & Guarantee Corp. v. Industrial Commission of Arizona, 32 Ariz. 275, 257 P. 644. The decision that is most nearly in point on the question here involved is from the Georgia Supreme Court, Bituminous Casualty Corp. v. Sapp, 1943, 196 Ga. 431, 26 S.E.2d 724, 725. We quote a part of that decision:

"As we view the matter, the Federal wage and hour law has no bearing whatever upon compensation for injury, except

that because of it the employee may have been receiving a different wage. * * *

* * * * * *

"While the Federal statute fixes a maximum number of hours for each workweek, and a minimum wage for each hour of work within the number specified, it does not prohibit an employee from working for a longer time in any week, if he is paid for overtime, 'at a rate not less than one and one-half times the regular rate at which he is employed.' 29 U.S.C.A. §§ 206, 207. The 'regular rate' as thus mentioned in section 207(a) (3) *merely fixes the basis for determining overtime wages under that statute* and has nothing to do with *'regular wage'* under the Georgia workmen's compensation act." (Emphasis supplied.)

 The term "guaranteed wage" used in the Arizona Workmen's Compensation Law is not synonymous with the term "regular wage" as used in the Federal Wage and Hour Law, nor with the "total contract earnings with overtime"· which an employee may collect in a suit at law under his employment contract as affected by the Fair Labor Standards Act.

We hold that the Federal statutes do not affect the amount of disability compensation the employee is entitled to receive under the provisions of the Arizona statute.

To reach its conclusion in ·this case the Commission evidently ignored its own printed regulations as contained in the Manual, the terms of the policy issued to the Company, as well as disregarding the express terms of the statute. Section 56-952, supra.

The compensation to be paid this employee must be based only on the guaranteed wage as the contract earnings in excess thereof, under the statute, can not be considered.

This case is clearly governed by the rule announced in the Jaime case, supra. Inasmuch as the findings and award of the Commission are not sustained by the evidence, the award is set aside.

STANFORD, C. J., and LaPRADE, J., concurring.