352 P.2d 356

James G. BIERMAN, Petitioner,

v.

MAGMA COPPER COMPANY, Defendant Employer,
The Industrial Commission of Arizona,
Defendant Insurance Carrier,
Respondents.

No. 6777.

Supreme Court of Arizona.

May 25, 1960.

Robert E. Yount, Scottsdale, for petitioner.

Guynn, Twitty & Sievwright, and John F. Mills, Phoenix, for respondent Magma Copper Co.

James D. Lester, Phoenix, for respondent Industrial Commission.

PHELPS, Justice.

Petitioner James G. Bierman seeks by certiorari to have the award of the Industrial Commission made on rehearing set aside. The decision affirmed former findings and award for unscheduled permanent partial disability, finding that petitioner had suffered a 45% general functional disability, and a 23.70% loss in his earning capacity.

Petitioner unquestionably suffered a severe injury including contusion to the lower back, contusion to the spinal cord and fractures of ribs and vertebrae. He underwent a long period of medical treatment including surgery. It is conceded that petitioner will never be able to return to the kind of work he was doing when injured. But it was determined by the physicians who were following his progress toward recovery that although his injury had not become stationary on March 27, 1958, nevertheless, recommended that he be given light work as a rehabilitation measure. Respondent thereupon, as was its custom, offered petitioner surface work in bundling wedges weighing approximately one pound each into bundles of twelve to be used in some of the processes of underground mining.

Petitioner steadfastly claims that he cannot do that kind of work because of the pain he continued to suffer in his lower back and right side when he undertakes to stoop or uses his arms and shoulders in a manner which places a strain upon the muscles of his lower back and muscles of the right side of his abdomen. (Doctor Steelman recognized this muscular weakness as resulting from the injuries received). This, he says, causes severe pain in his right groin and down his legs which, at times, causes him to black out. He declined to try to do this work because he said he knew he could not do it. It required stooping to pick up the wedges from the floor and put them on a table where, by the use of a machine, they were bound together.

Petitioner did not put on any witnesses to prove he could not do this work and Doctors Steelman and Bishop testified that he could do the work. Doctor Steelman stated that he was given rehabilitation exercises for some time at the Samuel Gompers Rehabilitation Center in Phoenix which were comparable to the exercise that would be required in bundling the wedges. Both Doctors testified he was physically able to do the work offered him by respondent.

The burden is upon an applicant in a case before the Commission to prove the material allegations of his petition by a preponderance of the evidence. The burden was upon him to prove his inability to do the light work offered him by respondent. McGill v. Industrial Commission, 82 Ariz. 36, 307 P.2d 1042.

A Mr. Barnett, who operated a gas station, garage and cafe at Florence Junction and had known petitioner for three years, testified that petitioner had rented a room and boarded with him until he was injured, and came back after the injury, after he had gotten out of the hospital. He stated since then he dragged his right foot when he walked and seemed to be drawn to one side; that he was always bracing himself by leaning on a table or arm of a chair, and if standing, he tried to get something high enough to lean on to brace himself. He stated he had never seen petitioner bend his body or stoop to pick up anything since his injury.

Petitioner had returned to Oklahoma to live with his parents for short intervals two or three times since the injury. While there Doctors E. H. Shuller and Elias Margo, both of whom are apparently of high repute in Oklahoma, examined petitioner and had X-rays made of his vertebrae and the entire bony structure involved, and confirmed the testimony of Doctors Steelman and Bishop of Phoenix as to the nature of petitioner's injuries. The last examination made by them was made in May 1958. Doctor Shuller was of the view that at that time he was not able to do any vigorous physical labor and that his work should be limited to a sedentary type of employment; and Doctor Margo stated that in his opinion, he was not able to perform ordinary manual labor. They made separate reports of their findings and opinions which are a part of the records of this case, exhibits A and B, presumably a part of petitioner's application for rehearing.

Doctor Stanford F. Hartman, orthopedic physician of Phoenix, also examined petitioner on July 23, 1958, and his report thereof is also on file as a part of the record in this case. He stated the lumbar spine shows an increased lordotic curve. He further stated there are ununited fractures involving the 1st, 2d, 3d and 4th transverse processes. He did not believe petitioner's case was stationary. He feels that petitioner is in need of stabilization in the region of the operative site and that a fusion be carried

out extending above and below the operative site. He stated that there was apparently a great deal of bleeding when surgery was performed and the dura apparently was not opened and the spinal cord investigated.

Doctors Howard W. Finke, Magma physician, and Doctor James R. Moore of Phoenix, joined in consultation with Doctors Steelman and Bishop on March 27, 1958, and reported on an examination made of petitioner on February 6, 1958, at which time *they found his injuries were not stationary* but that he had improved a great deal since their last examination of him on October 10, 1957, but stated he claimed to suffer pain all of the time; that his legs were weak which Doctor Steelman testified, in substance, was true, stating the reasons therefor. They found no specific indications of further medical or surgical treatment and were of the opinion that he was physically able to perform the work available to him, that is, the bundling of the wedges above mentioned. No mention was made of the nonunion of fractures involving the right 1st, 2d, 3d and 4th transverse processes nor the curve in the spine reported by Doctor Hartman which he discovered by reading X-rays taken July 24, 1958, nor of a soreness in the lumbar region, and an aching in the lower back when attempting to bend. Doctor Bishop pronounced this a "farce ma-lingering" when he testified as a witness on rehearing.

The Commission based its findings of loss of earning capacity on the difference between petitioner's average monthly earnings (not counting bonuses) and what he would have earned if he had accepted the wedge bundling job offered him by respondent. The Commission properly used the guaranteed wage as the basis of his average monthly wage. A.R.S. Subsection C of section 23-1041; Miami Copper Co. v. Schoonover, 65 Ariz. 239, 178 P.2d 554. If petitioner was physically able to perform the wedge bundling work the loss of earning capacity was also correctly ascertained. The evidence is in conflict on the issue of petitioner's ability to perform said work. The record is far from satisfactory in exploring the question of petitioner's ability to bundle the wedges in the light of Doctor Hartman's findings from X-ray pictures taken in July 1958 while X-rays relied upon by Doctors Steelman, Finke, Bishop and Moore apparently were taken in 1957. However, we have repeatedly held that where the evidence before the Commission is in conflict we will not disturb its award.

Affirmed.

STRUCKMEYER, C. J., and UDALL, JOHNSON and BERNSTEIN, JJ., concur.