ELOISE LOVETTE, MOTHER, JOHN LOVETTE, BROTHER, ELOISE J. LOVETTE AND SAMUEL LOVETTE, DECEASED, EMPLOYEE v. RELIABLE MANUFACTURING COMPANY, EMPLOYER, AND EMPLOYERS MUTUAL CASUALTY COMPANY, CARRIER.

(Filed 12 June 1964.)

**Master and Servant § 69—**

    A person surreptitiously employed by defendant's truck driver to aid in unloading the truck at terminals on interstate runs is, at most, a casual employee, and his average weekly wage must be computed on the basis of the wage actually paid him, G.S. 97-2(5), unaffected by the minimum wage under the Fair Labor Standards Act for persons engaged in interstate commerce, subject to the minimum of $10.00 per week, G.S. 97-38.

APPEAL by plaintiff Eloise Lovette, from *Brock, J.,* October 1964 Civil Session of GUILFORD (High Point Division).

Proceeding under the Workmen's Compensation Act to recover compensation for the death of Samuel Lovette. The facts are not in dispute and defendants admit liability. The only question is the amount of decedent's "average weekly wages" upon which to base the compensation.

Defendant employer, Reliable Manufacturing Company (Company), manufactures furniture in High Point, North Carolina, which it sells and transports in interstate commerce. On Monday evening, August 24, 1959, Earmon Harris, a truck driver regularly employed by the Company, left High Point with a load of furniture destined for several towns in West Virginia. The Company's drivers were instructed to employ local labor in the town of delivery to assist them in unloading. A rule of the Company prohibited truck drivers from taking either companions or helpers with them from High Point. On this occasion Harris was advanced sixty dollars as expense money, fifteen of which was earmarked to pay labor to help him unload in West Virginia.

Unknown to the Company, Harris had taken one Alexander Dumas with him from High Point on nine previous trips to assist him in the unloading. He paid Dumas six dollars a trip and furnished his food until all the furniture had been unloaded and the return trip began.

Harris instructed Dumas "to get another fellow who didn't mind work-ing" and who would be willing to accept these same terms to go with them on the trip to West Virginia. Dumas, himself unemployed and drawing unemployment compensation, procured the decedent, Samuel Lovette, also unemployed. Lovette had never taken one of these trips before. Neither Dumas nor Lovette was ever listed on any of the em-ployment records of the Company, and they were not known to it until after Lovette's death. On the trip the two men slept in the truck and were sustained by sandwiches, canned beans, bread, luncheon meat, soft drinks and coffee which Harris furnished at a cost of two dollars each per day.

Having unloaded furniture at three places in West Virginia and picked up some items to be returned to High Point at a fourth, Harris paid Dumas and Lovette six dollars each on Thursday morning, Au-gust 27, 1959 and they began the return trip to High Point. After breakfast on that day each man was responsible for his own food. About 4:00 p.m., in Peytona, West Virginia, the truck collided with a train at a grade crossing. Harris was killed and Lovette received injuries which thereafter caused his death.

Lovette's mother and brother filed a claim for compensation for his death. At the hearing it was stipulated that the employer-employee re-lationship existed between Lovette and the Company on August 27, 1959; that the decedent was injured by accident arising out of and in the course of his employment; that both employer and employee were bound by the provisions of the Workmen's Compensation Act; that the only question to be determined was Lovette's average weekly wage; and that his mother was entitled to whatever compensation was awarded. The Commission found the average weekly wage to be twenty-four dollars a week and awarded compensation accordingly. All parties appealed to the Superior Court.

The defendants contended that the evidence would support a find-ing that decedent's average weekly earnings were a maximum of only $10.67 ($6.00 plus subsistence of $2.00 a day or .67¢ a meal). The plaintiff contended that Lovette and the Company, being engaged in interstate commerce, were subject to the provisions of the Fair Labor Standards Act and therefore that Lovette's minimum wage was re-quired to be at least one dollar an hour. Figuring that Lovette had worked approximately sixty-three hours on the trip, plaintiff insisted that his average weekly wage should have been set at sixty-three dollars. The Superior Court remanded the cause to the Industrial Com-mission with directions that it enter an award based on an average weekly wage of $10.67. Plaintiff appealed.

*Schoch & Schoch by Arch K. Schoch for plaintiff.*

*Smith, Moore, Smith, Schell & Hunter by Richmond G. Bernhardt, Jr., for defendant.*

SHARP, J. Under the North Carolina Workmen's Compensation Act, compensation for the injury or death of an employee is based on his average weekly wages. These must ordinarily be determined by the employee's *actual* earnings in the employment in which he was injured during the fifty-two weeks, or such lesser period as he may have worked, immediately preceding his injury. G.S. 97-2(5); *Liles v. Electric Co.*, 244 N.C. 653, 94 S.E. 2d 790. The purpose of the statute is to base compensation upon the normal income which the employee derived from his employment. To provide for situations in which, because of the shortness of time during which the employee has worked for his employer or the casual nature or terms of his employment, it would be impractical or unjust to compute the average weekly wages as above defined, the statute requires that "regard shall be had to the average weekly amount which during the fifty-two weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community."

In the instant case, the only evidence in the record tending to show the average weekly amount being earned at any time before Lovette's injury by casual employees of his grade and character and employed in the locality to unload orders of furniture to be delivered by truck from the factory to the retailer, was that concerning the wages which Harris paid Dumas — six dollars and subsistence of two dollars a day. There is evidence of the hourly wage paid other such workers but not the weekly wage. Lovette was, at most, a casual employee of the Company and, except for the stipulation, he would have been outside the purview of the Act. Under the circumstances of this case, no reason appears why the wages he had actually received during that week, $10.67, should not be determinative of his average weekly wages unless, as plaintiff contends, compensation under the North Carolina Act is subject to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. §§ 201-219, which then required that a minimum hourly wage of one dollar be paid employees engaged in interstate commerce. 29 U.S.C.A. § 206.

Thus, this appeal presents the single question: Is the Fair Labor Standards Act of 1938 applicable to awards made pursuant to the North Carolina Workmen's Compensation Act? We concur in the answer which the Supreme Court of Georgia made when the question

was presented to it: "As we view the matter the Federal wage and hour law has no bearing whatever upon compensation for injury, except that because of it the employee may have been receiving a different wage. . . . The question at last is as to the weekly wage, for it is this and this alone that will determine the compensation. . . ." *Bituminous Casualty Corp. v. Sapp,* 196 Ga. 431, 26 S.E. 2d 724; 99 C.J.S., *Workmen's Compensation* § 292(b).

In *Miami Copper Co. v. Schoonover,* 65 Ariz. 239, 178 P. 2d 554, a claimant under the Arizona Compensation Act was injured while working in interstate commerce under a collective bargaining agreement between the union and his employer which provided for incentive bonus payments in addition to a guaranteed base wage. In such situations the Arizona law provided that an injured employee should "receive compensation on the basis only of the guaranteed wage as set out in the contract of employment." The contract was made pursuant to the requirements of "the Wagner Act, the Wage Stabilization Act, the Fair Labor Standards Act, and the Wage and Hour Law." The plaintiff contended that the Federal law determined the amount of the monthly wage which was the basis of his compensation and not the Arizona Workmen's Compensation Act. In disposing of this contention the Court said:

> ". . . If rights under those Acts were here involved, unquestionably the extra wages or remuneration earned by the employee as a result of his personal efforts would constitute a part of his average monthly wage.
>
> ". . . No issue is here presented, *nor could it be,* that the Company has in any respect failed to comply with all of the Federal acts above enumerated. Certainly Federal enactments would control where any violations of those laws were involved. . . .
>
> "The Federal Government has moved into the field of minimum wages and maximum hours where employees are engaged in interstate commerce. It has not moved into the field of disability compensation. The Arizona Workmen's Compensation Law, Code 1939, § 56-901, *et seq.,* is clearly within the field of permissible state legislation under its police power. *Ocean Accident Guarantee Corp. v. Industrial Commission of Arizona,* 32 Ariz. 275, 257 P. 644. The decision that is most nearly in point on the question here involved is from the Georgia Supreme Court, *Bituminous Casualty Corp. v. Sapp,* 1943, 196 Ga. 431, 26 S.E. 2d 724, 725."

We hold that the Federal statutes do not affect the amount of compensation claimant is entitled to receive under the provisions of the

North Carolina Workmen's Compensation Act. Under G.S. 97-38 she is entitled to receive compensation at the minimum rate of ten dollars a week.

The judgment of the Superior Court is
Affirmed.