640 P.2d 189

**UNITED RIGGERS ERECTORS,**
**Petitioner-Employer,**

**Hartford Accident and Indemnity Company, Petitioner-Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Charles Battaglia, Respondent-Employee.**

**No. 1 CA–IC 2408.**

Court of Appeals of Arizona,
Division 1, Department C.

July 28, 1981.

Rehearing Denied Dec. 10, 1981.

Review Denied Jan. 6, 1982.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Donald L. Cross, Larry L. Smith, Phoenix, for petitioner-employer and petitioner-carrier.

Calvin Harris, Chief Counsel, Industrial Commission of Arizona, Phoenix, for respondent.

Frank W. Frey, Tucson, for respondent-employee.

## OPINION

O'CONNOR, Judge.

The employer, United Riggers Erectors, and the insurance carrier have brought this Industrial Commission special action to challenge a loss of earning capacity award to a claimant who has been incarcerated in a prison. The respondent employee, Charles Battaglia, suffered an industrial injury while working for the petitioner in 1977. His workmen's compensation claim was accepted for benefits by the carrier, and benefits were paid until July 28, 1978, when the carrier issued a notice of claim status terminating benefits with a permanent partial disability of 15%. Thereafter, Mr. Battaglia pled guilty to mail fraud and was sentenced to three years in a federal penitentiary. After Mr. Battaglia was sentenced, the Industrial Commission issued its findings determining that he had a 56.67% reduction in his monthly earning capacity as a result of the industrial injury. The carrier requested a hearing after which the administrative law judge found that the employee had sustained a 54.93% reduction in his earning capacity. The administrative law judge also determined that Mr. Battaglia's incarceration did not prevent him from receiving permanent partial disability benefits, and he allowed proof of loss of earning capacity by the use of expert testimony and hypothetical questions. The award was affirmed on administrative review, and this special action was filed.

Petitioners raise three issues: (1) whether the employee's incarceration constitutes a voluntary removal from the job market, thereby precluding him from receiving permanent partial disability benefits; (2) whether the employee's status as a prisoner creates an economic condition precluding

him from proving a loss of earning capacity; and (3) whether loss of earning capacity may be proven by hypothetical questions of an expert witness.

With respect to the first issue raised by petitioners, they contend that the employee's inability to work and to seek suitable employment is the result of his own criminal conduct and his subsequent incarceration, and that the employee was required to prove that he had made a good faith and · reasonable effort to find other employment. The administrative law judge rejected petitioner's contentions and concluded that the case was governed by *Bearden v. Industrial Commission*, 14 Ariz.App. 336, 483 P.2d 568 (1971). The *Bearden* case held that a claimant was not disqualified from receiving total temporary disability benefits during his confinement in prison for a criminal offense. The court found that:

> ... [T]he Arizona Legislature has not provided for the forfeiture or suspension of compensation and accident benefits during the period of the prison confinement of a claimant serving a sentence less than life. We find no extensions of time within which to process and protect his workmen's compensation rights during a period of confinement. We expressly refrain from expressing an opinion as to the effect of a life sentence whereby one is declared to be civilly dead.

14 Ariz.App. at 343, 483 P.2d at 575.

Mr. Battaglia was seeking permanent, rather than temporary, disability benefits. A.R.S. § 23–1041 provides in part that:

> Every employee ... who is injured by accident arising out of and in the course of employment ... shall receive the compensation fixed in this chapter on the basis of such employee's average monthly wage at the time of injury.

A.R.S. § 23–1044(C) provides in part that: [W]here the injury causes permanent partial disability for work, the employee shall receive during such disability compensation equal to fifty-five percent of the difference between his average monthly wages before the accident and the amount which represents his reduced monthly earning capacity resulting from the disability, but the payment shall not continue after the disability ends, or the death of the injured person....

█ No provision in the workmen's compensation statutes expressly prohibits payment of disability benefits during periods when the claimant is confined in a penal or other institution.[1] Many Arizona decisions involving the burden of proof in loss of earning capacity hearings enunciate the concept of requiring a claimant to prove he has made a good faith and reasonable effort to find other employment after his industrial injury has become stationary. The injured claimant has the burden of proof in establishing that he is entitled to compensation. *Wiedmaier v. Industrial Commission*, 121 Ariz. 127, 589 P.2d 1 (1979); *Standard Accident Ins. Co. v. Industrial Commission*, 66 Ariz. 247, 186 P.2d 951 (1947). However, once the injured worker has shown that his industrial injury prevents him from returning to his former job, that he has a permanent partial disability resulting from the injury, and that he has made a good faith and reasonable effort to find other work, then the burden of going forward with the evidence shifts to the employer. *See, e.g., Wiedmaier v. Industrial Commission, supra,* and cases cited therein. As explained in *Wiedmaier*:

> After a workman has received an unscheduled injury and the percentage of permanent disability has been determined, if suitable work that he can do in his disabled condition is not available in the area where the workman resides the measure of workman's loss of earnings is the salary he received before the injury. The workman has an obligation, however, to take such work as he is able to perform

---

1. The workmen's compensation statutes provide for suspension or. reduction of benefits under certain circumstances which do not include periods of confinement in penal institutions. *See, e.g.,* A.R.S. §§ 23–1071 (absence from the state without Commission approval), 23–908 (failure to report accident and refusal of employer's medical examination), 23–1026 (refusal of medical examination), 23–1027 (unreasonable refusal of medical treatment).

and is available in order to mitigate the amount of compensation that may be due him. *Timmons v. Industrial Commission,* 20 Ariz.App. 57, 510 P.2d 56 (1973). Not only does this reduce the amount of benefits that must be paid, but usually has a beneficial rehabilitative result as far as the injured workman is concerned. *If suitable work is available and the workman refuses to take the job, the carrier must pay only an amount based upon what he would have received had he accepted the work available.* 121 Ariz. at 128–29, 589 P.2d at 2–3 (emphasis added).

■ The respondent employee has not claimed disability benefits over and above the amount that he says is based on the proof of what he could have earned had he been out of prison and able to accept the work available, considering his industrially caused physical impairment. We believe the administrative law judge correctly determined that under present Arizona law and on the facts of this case, the employee was not precluded from receiving permanent partial disability benefits by virtue of his incarceration. It is not our function to question the wisdom of the legislative scheme, but to interpret and apply the statutes as they have been enacted.

In further support of their first argument, petitioners cite *Bryant v. Industrial Commission,* 21 Ariz.App. 356, 357–58, 519 P.2d 209, 210–11 (1974), for the proposition that "where the predominant cause of an injured workman's changed economic status is of his own making ... the Industrial Commission will not subsidize [him] for his miscalculations." The *Bryant* case arose

out of a petition by an injured worker to readjust or rearrange his disability benefits pursuant to A.R.S. § 23–1044(F) after he voluntarily left his post-injury job to take a better job, but the new position was terminated after a short time, leaving him without a job and unable to find any employment. Bryant's reduced earnings were caused by his voluntary action, not by his industrial injury.[2]

We find the facts of the present case distinguishable from those of *Bryant.* Mr. Battaglia did not lose his job due to his voluntary criminal conduct, but rather because of his industrial injury. After the injury, he attempted to return to his job with the petitioner employer, but was unable to continue because of back pain and quit work some ten days after the injury. The record does not show that he has ever returned to work.

■ The question in the present case is whether the evidence was sufficient to support an initial determination that the employee had a loss of earning capacity caused by the existence of the permanent partial disability for work. A.R.S. § 23–1044(D) sets forth some of the factors to be considered in making this determination. The voluntary conduct of the claimant resulting in his incarceration and inability to work in order to mitigate his loss of earnings does not preclude him from proving the amount of his reduced monthly earning capacity caused by his job related physical impairment, based on an assumption that he could accept suitable employment. The employee's status as a prisoner does not excuse him from complying with the various requirements of the workmen's compensation

2. In this regard, we also note such cases as *Todd v. Hudson Motor Car Co.,* 328 Mich. 283, 43 N.W.2d 854 (1950), in which the partially disabled injured employee had been reemployed at the same salary at lighter work. He was fired for the illegal act of gambling at work and applied for and received compensation for partial disability during the resulting six month period of unemployment. The Michigan Supreme Court set aside the award of benefits, holding:

It is the duty of a disabled employee to cooperate not only by accepting tendered fa-

vored employment which he is physically able to perform [citation omitted], but also by refraining from criminal conduct.... Where he engages in criminal gambling activities while at work and is discharged for that cause, he will not be entitled to compensation for the resultant loss of earnings. His favored employment has ceased through his own volition and turpitude and not by reason of his accidental injury.

*Id.* at 289, 43 N.W.2d at 856.

statutes. *Continental Casualty Co. v. Industrial Commission*, 113 Ariz. 116, 547 P.2d 470 (1976). On the other hand, it does not preclude him from receiving benefits if he meets his burden of proof. *Bearden v. Industrial Commission, supra.* Moreover, A.R.S. § 13–904(D) provides in part that "[t]he conviction of a person for any offense shall not work forfeiture of any property, except if a forfeiture is expressly imposed by law." The right to receive workmen's compensation benefits is a property right. *Bugh v. Bugh*, 125 Ariz. 190, 608 P.2d 329 (App.1980). In the absence of legislation providing for a suspension of workmen's compensation benefits during periods while the claimant is incarcerated, A.R.S. § 13–904(D) indicates that the imprisonment does not preclude the award of benefits if the employee is otherwise entitled to receive them.

██ Petitioners' second contention is that the employee's incarceration is an economic circumstance which caused his loss of earning capacity, and he is thereby precluded from receiving benefits, citing *Wiedmaier v. Industrial Commission, supra*, and *Fletcher v. Industrial Commission*, 120 Ariz. 571, 587 P.2d 757 (App.1978). *Wiedmaier* and *Fletcher* establish that where there are no jobs available solely because of general economic circumstances or other reasons unrelated to the industrial injury, the employee is not entitled to receive workmen's compensation benefits.[3] As stated in *Wiedmaier*:

Where the workman shows he has made a good faith effort to obtain employment and that none is available, the carrier may show that the inability of the workman to obtain employment is not due to the workman's physical condition, but due to the fact that economic conditions are such that no jobs are available. [citation omitted] This follows the intent of the Workman's Compensation Act that the workman should be compensated for loss of earning capacity only. [citation

omitted] *Where there are no jobs available because of economic conditions, the workman is not prevented from obtaining work because of his physical impairment. He would not be hired regardless of his physical condition. Therefore, he has suffered no loss of earning capacity because of his industrial injury.*

121 Ariz. at 129, 589 P.2d at 3 (emphasis added).

However, the Industrial Commission

. . . should consider not only the actual impairment of the physical and mental capacity of the injured person to do work, but whether and to what extent his injury is likely to deprive him of the ability to secure the work which he might do if he were permitted to attempt it.

*Ossic v. Verde Central Mines*, 46 Ariz. 176, 191, 49 P.2d 396, 402 (1935).

As stated in *Fletcher*:

The standard applied in virtually all of the cases which have come to our attention is that when a claimant loses employment as a direct result of economic or other reasons unrelated to his injury, he may nevertheless be entitled to compensation if he is able to show that the difficulties in finding other employment are due to his injuries.

120 Ariz. at 573, 587 P.2d at 759.

In this case, two labor market experts testified at the hearing. Both evaluated the employee's employment potential with regard to his age, education, training, work experience and his industrially caused physical limitations. Both conducted labor market surveys of the metropolitan Tucson area. Both experts agreed that, because of the respondent employee's industrial injury, his employment opportunities are limited to relatively sedentary unskilled jobs which pay low wages. Their testimony supported the findings of the hearing judge that the employee had the capacity to be employed in one of several positions available at a shooting equipment factory in Tucson at a rolled back monthly wage of $450.63. The

---

**3.** *Wiedmaier* involved a widespread scarcity of construction jobs due to economic conditions in the construction industry and *Fletcher*, the clo-

sure of a copper mine which was "economically catastrophic to the area", 120 Ariz. at 572, 587 P.2d at 758.

findings and award were not based on any incapacity to work resulting from the employee's incarceration. The award has compensated the employee for his losses attributable to his industrial injury rather than for any loss attributable to his incarceration.

 Finally, petitioners contend that the award may not be based solely on the hypothetical testimony consisting of questions and answers by the expert witnesses where the employee made no attempt to seek employment. The hearing judge determined otherwise, finding that under cases such as *Wiedmaier v. Industrial Commission, supra:*

> ... [T]here is no logical or legal reason to assume that the only way a claimant can meet his burden of establishing the amount of his reduced earning capacity is through the showing of an unsuccessful good faith effort to secure suitable employment. One of the specific evidentiary guidelines that a hearing officer is required to consider in establishing the amount representing the applicant's reduced earning capacity under § 23–1044 D is "... [T]he type of work the injured employee is able to perform subsequent to the injury...." The undersigned can perceive of no legal reason why the applicant could not elect to meet his burden by relying upon his expert employment witness to show the type of available post injury work that the applicant was able to perform with his residual injuries and the amount that might be earned in such employment. The principle underlying the applicant's duty to mitigate his damages, see, *Hoffman v. Brophy*, 61 Ariz. 307, 149 P.2d 160 (1944) could be satisfied in such event by basing the loss of earning capacity award upon what the applicant would have merited had he accepted the available work within his capacities, *Wiedmaier v. Industrial Com'n, supra; Bierman v. Magma Copper Company*, 88 Ariz. 21, 352 P.2d 356 (1950).

We agree. As this court stated in *Bearden, supra:*

> We recognize that it may be difficult to determine loss of earning capacity while a person is confined with a disability which is less than a total disability, whether that total disability be permanent or temporary. The fact that a particular case presents a difficult problem does not resolve the case into one of no compensation.

*Id.* 14 Ariz.App. at 342–43, 483 P.2d at 574–75.

We believe the hearing judge correctly determined that the award could be based on the hypothetical testimony of the expert witnesses. *Franco v. Industrial Commission*, 130 Ariz.App. 37, 633 P.2d 446 (1981).

The award is affirmed.

WREN and FROEB, JJ., concur.