SAVEA ENEKOSI, Plaintiff

v.

WORKMEN'S COMPENSATION COMMISSIONER
MOAALIITELE L.K. TU'UFULI, Defendant

High Court of American Samoa
Trial Division

CA. NO. 64-86

October 28, 1986

Before REES, Chief Justice, and TAUANU'U, Chief
Associate Judge.

Counsel: For the Plaintiff, John Ward
For the Defendant, Donald Griesmann,
Assistant Attorney General

Plaintiff, a bus driver, was injured while changing a tire on his bus. In a Workmen's Compensation Commission proceeding brought by plaintiff against his employer, the Commission found that plaintiff was paid a specified percentage of the amount he collected from passengers. At the time of the injury he was paid 40 cents for each dollar he collected. The Commission concluded that his wages for Workmen's Compensation purposes should be calculated according to the provisions of A.S.C.A. § 32.0621(d)(1), which deals with "wages . . . fixed by the day or hour, or by the output of the employee." Although the Commission did not so specify, it is clear that it regarded the plaintiff as an employee whose wages were fixed by 'output' rather than by the day or hour.

Plaintiff seeks a reversal of the Commission's ruling on the ground that the amount awarded is less than the amount he would have been awarded if he had been paid the minimum hourly wage under the federal Fair Labor Standards Act for the hours that he worked.

Plaintiff asks that this Court revise the Commission's ruling so as to award him the amount he would have been awarded if his employer had been paying him on an hourly basis, at the minimum hourly wage under the federal Fair Labor Standards Act. He advances two arguments for such a revision:

(1) Since his gasoline expenses were deducted from his gross receipts prior to the calculation of his forty per cent payment, his wages were not "fixed by output." He would make more money for trips on which he carried many passengers than for those on which he carried only a few.

(2) The wage plaintiff was actually being paid was below that set by the Fair Labor Standards Act. The Court should not countenance such a violation by upholding a Workmen's Compensation Award based on the illegal wage.

We are satisfied that plaintiff's wages were fixed by output within the meaning of the statute, notwithstanding the requirement that plaintiff pay his own gasoline expenses. Payment by the employee of some or all of the expenses necessary to generate income is so common in connection with output or piecework contracts as perhaps to be the rule rather than the exception. If the Fono had

wished to carve such a gaping hole in the "fixed by output" provision, we believe they would have done so explicity.

This is particularly true in light of the fact that the general principle behind workers' compensation formulas is that the injured worker is paid a certain percentage of what he would have made if he had not been injured. Plaintiff seeks to escape from the coverage of a section of the statute that would do precisely that, and to seek refuge in a "fall back" provision apparently designed for cases in which it is implausible to attempt an estimate of what the worker would have earned. He therefore urges the Court to place undue emphasis on one possible construction of the word "fixed" and to ignore the purpose of the system of classification established by the statute. In the context of the statutory scheme, "fixed by output" seems equivalent to "figured according to output rather than periodically." It makes no more sense to exclude the plaintiff from this category because his gasoline expenses were deducted than to exclude an hourly employee from the "fixed by the hour" provision on the ground that non-hourly sums for union dues, health insurance, or work clothes may have been deducted from his paycheck.

The second issue is a much closer one. It is axiomatic that courts will not enforce illegal contracts. Like many axioms, however, this one is best known for its exceptions.

Except in those rare cases where the legislature has specifically defined the consequences of a particular kind of illegal contract, courts are left to "a delicate balancing of factors for and against enforcement of the particular agreement." E. Farnsworth, Contracts § 5.1 at 328. Illegal conduct should of course be deterred and punished, and judicial process should not be available to those who seek only to consolidate or recover ill-gotten gains. But unenforceability may not always deter or punish, and may sometimes even reward the principal wrongdoer. Then, too, "caution . . . is . . . especially necessary in these times when so much of commercial life is governed by regulations of one sort or another, which may easily be broken without wicked intent." St. Johns Shipping Corp. v. Joseph Rank Ltd. (1957) ) Q.B. 267 (Devlin, J). Finally, there is the question whether a court decision taking cognizance in one way or another of the fact

that a particular agreement has been made amounts to "enforcement" of that agreement.

As illegal agreements go, this was not a very wicked one. Indeed, we take it more or less on faith that this employment contract violated the Fair Labor Standards Act, since the otherwise copious and diligent brief of plaintiff's counsel directs us to no particular page among the two thousand or so in the United States Code Annotated devoted to that Act and interpretations thereof. We do note that a former explicit exemption for the "motor bus carrier" industry was repealed in 1974. See 29 U.S.C. § 213(a)(9) (1965); Pub.L. 93-259, § 10(a), enacted Apr. 8, 1974, codified at 88 Stat. 63. We note also, however, that it is a common practice among companies that own taxicabs in the United States and aiga buses in American Samoa to "rent" their vehicles to "independent contractors" who are not regarded as employees and who receive no wages and no benefits but only some portion of what they collect from passengers. In the present case the employer stipulated that the plaintiff was his "employee," and there may have been indicia of employment that set him apart from his non-employee brethren. If so, the contract in this case was illegal in that it skirted the elusive boundary between employees and independent contractors. But it is hard to regard the employer as any more malicious than, for instance, the thousands of newspapers that contract with independent twelve-year-olds to deliver papers for a fraction of the minimum wage.

Nor are we faced with a choice between "enforcement" and "non-enforcement" of the employment contract. A court that quiets a title to land in Manhattan may thereby be said to "enforce" the arguably unjust contract by which that island was purchased from its original inhabitants for twenty-three dollars; but it does so only incidentally, acting primarily on the basis of facts and values that have little to do with the original transaction. In this case, the relationship between the compensation award and the assumed violation of the Fair Labor Standards Act is an attenuated one; that there is any relationship at all is due only to the strong policy of the Workmen's Compensation Act that compensation shall be based on actual earnings rather than on the "deserving" or "undeserving" status of the employee or on the employer's fault or lack thereof.

84

In light of this collateral relationship, and of the substantial penalties for violation of the Fair Labor Standards Act in the Act itself, there is no evidence that "non-enforcement" in this case would have a substantial effect in deterring violations. Indeed, it is important to notice that plaintiff urges the Court not to wash its hands of the whole sordid business by enforcing no contract at all, but rather to assume an entirely different and hypothetical contract between the parties. Any slight reinforcement we might give to the policy behind the Fair Labor Standards Act by taking this course would be at the expense of far clearer and more substantial damage to the policy behind the Workmen's Compensation Act.[1]

---

[1] We note that most courts faced with the question we address today seem to have upheld calculation of compensation according to actual wages even where those wages were below the minimum wage. See McCrudden v. Venditto Bros., Inc., 235 A.2d 878 (1967); Lovette v. Reliable Manufacturing Co., 136 S.E. 2d 685 (N.C. 1964); Miami-Copper Co. v. Schoonover, 178 P.2d 554 (Ariz. 1947); Bituminous Casualty Corp. v. Sapp, 26 S.E. 2d 724 (Ga. 1943). One leading commentator is highly critical of these opinions, but his criticism is based partly on language in some statutes that says the actual wage formula should be applied only when it can be done so "fairly." See 2 A. Larson, The Law of Workmen's Compensation § 60.11 (d) at 10-559 to 10-565 (1983). The American Samoa Code contains no such provision. Larson makes a more general argument that "earning capacity" should be deemed to include what the injured person would have earned in the future, and that the court should assume future wages would be at the minimum wage. Id. at 10-565. But this assumption may be contrary to fact, since enforcement of a minimum wage --- as is well known in American Samoa --- may well result in the termination of marginal employees, or perhaps in a restructuring of the economic relationship into a genuine "independent contract," rather than in continued employment at the statutory wage rate. Plaintiff urges us to reach a result similar to that urged by Larson on the basis that a compensation award based on a below-minimum wage rate would not be an award "in accordance with law" within the meaning of A.S.C.A. § 32.0652. For the reasons stated in the text of this opinion, however, we hold that the award here is "in accordance with law": it is exactly in accordance with the territorial Workmen's Compensation Act,

85

The complaint is dismissed, and the judgment of the Commission is upheld.

---

and does not constitute a violation of the Fair Labor Standards Act or of any other law.