773 P.2d 241

W.F. DUNN, SR. & SON,
Petitioner Employer,

State Compensation Fund,
Petitioner Carrier,

v.

The INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,

Eusebio Vielma, Respondent Employee.

No. 1 CA–IC 88–012.

Court of Appeals of Arizona,
Division 1, Department B.

April 25, 1989.

**344**

Christopher E. Kamper, Chief Counsel State Compensation Fund by Diane Lindstrom, Phoenix, for petitioner employer/carrier.

Catherine A. Fuller, Chief Counsel, The Indus. Com'n of Arizona, Phoenix, for respondent.

Stephen L. Weiss, Kerrie A. Andersen, Phoenix, for respondent employee.

## OPINION

FIDEL, Judge.

The claimant, a farm worker, sustained a permanent and disabling injury. Although the injury left him physically able to perform light work, none was available in farm labor, and a pre-injury criminal conviction made it unlikely that he could find such work in another field. The Industrial Commission concluded that the claimant had a total loss of earning capacity and awarded him permanent total disability benefits. The employer and carrier appeal. We consider three issues:

(1) Was claimant's pre-injury conviction properly considered by the administrative law judge in determining his present earning capacity?

(2) Was claimant obliged to prove the conviction by documentary evidence, or did his testimonial evidence suffice?

(3) Should the incremental disability attributed to the claimant's prior conviction be apportioned and deducted from his award pursuant to A.R.S. § 23–1044(E)?

For reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

Before his injury, claimant earned more than the statutory maximum wage. *See generally* A.R.S. § 23–1041(E). In 1981, he suffered a compensable back injury, requiring surgery. Claimant's condition stabilized in April of 1986 with permanent impairment. His employer's compensation carrier, the State Compensation Fund, terminated temporary benefits and referred the claim to the Industrial Commission for an assessment of earning capacity. *See generally* A.R.S. § 23–1047.

Although claimant could not return to farm work, the Commission concluded that he could work as a light delivery truck driver. On this basis, the Commission determined that the claimant had sustained a 78.09% loss of earning capacity. Claimant protested this award, and a hearing followed. Pending the hearing, the Fund submitted medical evidence that claimant was physically capable of performing part-time work as a school bus driver. It also surveyed the applicable labor market to determine the general availability of that position.

At the scheduled hearing, claimant's counsel anticipated the Fund's labor evidence by questioning claimant about his criminal record. The claimant testified that in Texas in 1974 he was convicted of indecent exposure and sentenced to two years of imprisonment. He further testified that he was incarcerated for one year, part in jail and part in prison. Counsel for the Fund objected, arguing that the conviction could not be offered into evidence without documentation and that it should not be considered in determining the claim-

ant's loss of earning capacity.[1] The administrative law judge allowed claimant's testimony, ruling that the lack of documentation affected only the weight of the evidence, not its admissibility. The hearing proceeded with the testimony of the claimant's and the Fund's labor experts.

Both experts were unaware of claimant's criminal record when they performed their labor surveys, and both had originally concluded that part time school bus driving would suit his physical capabilities. Asked, however, how a past conviction for indecent exposure would affect claimant's employability, both experts conceded the unlikelihood that he would be hired to drive children to school.

In his initial post-hearing findings, the administrative law judge accepted the Fund's arguments that (1) claimant had the burden of producing the judgment of conviction under Rule 1002, Arizona Rules of Evidence; (2) the conviction was too remote under Rule 609(b), Arizona Rules of Evidence; and (3) public policy barred consideration of the conviction. He accordingly awarded permanent partial disability benefits based on the availability of a school bus driver position. On administrative review, however, he entered a total disability award, stating:

10. The only evidence regarding the prior felony conviction is the testimony of applicant and there was no documentation presented.

11. There was evidence from the employment experts that applicant would probably not be hired as a school bus driver because of the time he spent in prison.

12. The Undersigned believes that applicant did spend a year in prison.

13. That while it is reasonable to infer it is not the intent of the Arizona Workers' Compensation Law to allow an applicant to benefit from time spent in prison, obviously for some crime, it is likewise the law in Arizona that a prior conviction, for any offense, shall not work a forfeiture of any property, unless expressly imposed by law. *Bearden v. Industrial Commission*, 14 Ariz.App. 336, 483 P.2d 568 (1971); *United Riggers Erectors v. Industrial Commission*, 131 Ariz. 258, 640 P.2d 189 ([App.] 1981).

14. Considering the evidence in its entirety, the Undersigned finds that applicant has sustained a total loss in earning capacity as a result of his industrial injury and is entitled to benefits for same until death or further order or award of the Commission.

From the Industrial Commission decision, the Fund petitioned for special action review.

## II. EVIDENCE OF CONVICTION

We first consider whether claimant proved his conviction by competent and sufficient evidence. The Fund relies on Rule 1002 of the Arizona Rules of Evidence for its assertion that documentary evidence was required. 17A A.R.S. The Fund also cites Arizona Rule of Evidence 404(b).[2]

■ Rule 1002 requires "the original writing" to "prove the content of a writing." By its terms, this rule applies only to the contents of a document, not to the documented event:

Application of the rule requires a resolution of the question whether contents are sought to be proved. Thus an event may be proved by non-documentary evidence, even though a written record of it was made. If, however, the event is sought to be proved by the written

---

1. The Fund has never contended that claimant failed to timely disclose his defense. It was unprepared to rebut claimant's testimony not because of surprise, but because of its erroneous conclusion that testimony alone was legally insufficient. We find no denial of "substantial justice." A.R.S. § 23–941(F).

2. The Fund's argument assumes that the Rules of Evidence govern Industrial Commission hearings. A.R.S. § 23–941(F) provides, however, that "the administrative law judge is not bound by common law or statutory rules of evidence ... and may conduct the hearing in any manner that will achieve substantial justice." This point is not determinative, however, for, as we hold *infra*, even if the Rules of Evidence were applicable, neither Rule 1002 nor Rule 404(b) was violated in this case.

record, the rule applies. For example, payment may be proved without producing the written receipt which was given. Earnings may be proved without producing books of account in which they are entered.

Moore's Federal Practice, Rules Pamphlet (Part 2, 1987) at 412.

Applying this principle to the present case, we conclude that claimant was not attempting to prove the content of the judgment of conviction, but rather the fact of conviction itself. Rule 1002 does not apply.

■ The Fund also asserts that Arizona Rule of Evidence 404(b) applies. Rule 404(b) excludes "[e]vidence of other crimes ... to prove the character of a person in order to show that he acted in conformity therewith." The Fund suggests that this rule applies because claimant was attempting to prove the likelihood that he would act in conformity with a prior bad act. To the contrary, claimant's purpose was not to show that he was likely to commit another act of indecent exposure; his purpose was only to show the unlikelihood, given his record, that a school district would hire him to transport children. Rule 404(b) does not apply.

■ The Fund has cited no other authority for its position that claimant had the burden of producing documentation of the conviction. We conclude that the claimant's testimony was probative on the subject of his conviction; his failure to produce documentation affected only the credibility of his testimony, not its admissibility. Similarly, the Fund's arguments concerning remoteness and vagueness concern the weight of the evidence, not its admissibility.

It is the role of the administrative law judge to decide the credibility of the witness, and this court must affirm if there is any reasonable basis for the decision. *Perry v. Industrial Comm'n*, 112 Ariz. 397, 398, 542 P.2d 1096, 1097 (1975). We conclude that the administrative law judge neither erred in admitting nor erred in crediting the claimant's testimonial evidence of conviction.

## III. CRIMINAL HISTORY AND LOST EARNING CAPACITY

We turn to the question whether the administrative law judge appropriately considered the claimant's prior conviction and imprisonment in determining his present earning capacity.

### A. *Forfeiture*

As indicated from the quoted portion of the Industrial Commission's findings and award, the administrative law judge concluded from a reading of the *Bearden* and *United Riggers* cases that the Commission would subject the claimant to an impermissible forfeiture, contrary to A.R.S. § 13–904(D), if it failed to consider the employment impact of his prior conviction.

We do not find *Bearden* or *United Riggers* dispositive. Section 13–904(D) provides in part:

> The conviction of a person for any offense shall not work forfeiture of any property, except if a forfeiture is expressly imposed by law.

In *Bearden* this court applied that statutory language in deciding that a claimant's temporary disability benefits could not be suspended during imprisonment. 14 Ariz. App. 336, 343, 483 P.2d 568, 575 (1971). In *United Riggers* we held similarly with respect to permanent disability. 131 Ariz. 258, 261, 640 P.2d 189, 192 (App.1981). In each case the carrier claimed that post-injury conviction and imprisonment enabled it to suspend disability benefits to which the claimant had otherwise established a right. To do so, each case held, would constitute a forfeiture imposed upon conviction.

The case before us is not comparable. Here, the carrier does not contend that the claimant's pre-injury imprisonment renders him ineligible for, or suspends his entitlement to, a present disability award. Rather, the carrier concedes the claimant's entitlement to a disability award, but claims that the impact of claimant's past conviction on his present employability is an ineligible consideration in determining the amount of that award. It would stretch

considerably beyond *Bearden* and *Riggers* to find forbidden forfeiture in this context. We need not do so. We do not dispose of the case on grounds of forfeiture. We resolve it instead by considering the requirement that the Industrial Commission focus on employment realistically available to a claimant when determining his loss of earning capacity.

## B. *Realistically Available Employment*

■ A.R.S. § 23–1045(D) governs compensation of non-presumptive permanent total disability. It requires the Commission to determine the extent of disability "in accordance with the facts." The Fund argues that the employment inhibiting impact of prior conviction and imprisonment is an inappropriate fact to be considered. To support its position, the Fund cites *Miller v. Industrial Comm'n*, 122 Ariz. 493, 595 P.2d 1038 (App.1979).

*Miller* arose in an entirely different context. The claimant there sustained what would ordinarily have been classified as a scheduled permanent injury. *See* A.R.S. § 23–1044(B) (Supp.1988). An otherwise scheduled injury is treated as an unscheduled injury, however, if the claimant also suffers from a pre-existing earning capacity disability. *See* A.R.S. § 23–1044(E); *Alsbrooks v. Industrial Comm'n*, 118 Ariz. 480, 483, 578 P.2d 159, 162 (1978). The claimant in *Miller* argued that his race, illiteracy, and low intelligence amounted to a pre-existing disability that would entitle him to unscheduled treatment of his current injury. This court rejected that argument, stating:

> In order for an earning capacity disability to operate to convert a later scheduled disability into unscheduled, the earning capacity disability must be one that would have been cognizable under our workmen's compensation statute had it resulted from an industrial accident.

122 Ariz. at 494, 595 P.2d at 1039.

*Miller* has no bearing on this case. This may be seen by examining the *Miller* factors of literacy and intelligence themselves. Whatever the relevance of those factors under § 23–1044(E) when a claimant seeks to convert a scheduled into an unscheduled award, they are clearly relevant considerations under § 23–1044(D) or § 23–1045(D) when the Commission must determine the realistic present earning capacity of the claimant. This is not a 1044(E) case but a 1045(D) case. The claimant seeks no scheduled-to-unscheduled conversion. He claims only that the occupationally disabling consequence of his conviction is a relevant *fact* to be considered in determining what work is realistically available in his post-injury condition.

*Miller* is inapposite, and there is no other Arizona case dispositive of the issue we now face. Claimant, however, cites a federal case on point—*Hairston v. Todd Shipyards Corp.*, 849 F.2d 1194 (9th Cir.1988). *Hairston* arose under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901 to 950 (1986 & Supp.1988). After an industrial injury, the worker initially obtained a maintenance position with a bank, but the employer discharged him when "an FBI search revealed [his] prior criminal record for shoplifting." *Id.* at 1195. The administrative law judge first concluded that, "because of [claimant's] past criminal record, a position in a bank was never realistically available to [him]." *Id.* The agency reversed on administrative review, reasoning that a "past criminal conviction should not be considered when evaluating job availability because, unlike age, education, or prior work experience, a past criminal record does not impair a worker's ability to perform the duties of a job." *Id.* The Ninth Circuit reversed again and reinstated the original award. The court applied a standard of realistic availability, and it rejected the argument that a prior criminal conviction should be excluded from consideration in determining what forms of work are realistically available to a disabled worker. It stated:

> Like a limitation of education or literacy, Hairston's criminal record was incurred well before his injury, not in contemplation of it. No matter how diligently he tried, Hairston could have done nothing to overcome the disqualifying effect of his record.

*Id.* at 1196.

We find *Hairston* compatible with Arizona's approach to questions of residual

earning capacity. Our supreme court has stated:

> The universally recognized ultimate issue in determining loss of earning capacity is: "to determine as near as possible whether in a competitive labor market the subject in his injured condition can probably sell his services and for how much."

*Zimmerman v. Industrial Comm'n of Arizona*, 137 Ariz. 578, 583–84, 672 P.2d 922, 927–28 (1983) (quoting *Davis v. Industrial Comm'n*, 82 Ariz. 173, 175, 309 P.2d 793, 795 (1957)).

Within this "ultimate issue" the court has identified subsidiary issues of suitability and availability. A suitable job is one that the claimant is physically able and qualified to perform. *See, e.g., Zimmerman*, 137 Ariz. at 582, 672 P.2d at 926; *Roach v. Industrial Comm'n*, 137 Ariz. 510, 513, 672 P.2d 175, 178 (1983). A reasonably available job is one in sufficient supply within the competitive labor market of claimant's residence as to offer the claimant a reasonable prospect of securing such work. *Zimmerman*, 137 Ariz. at 583, 672 P.2d at 927; *Roach*, 137 Ariz. at 511–12, 672 P.2d at 175–76.

The present case is more a suitability case than an availability case, though the categories overlap. The labor experts could identify only one job within the restricted labor market of the claimant's residence for which he was not disqualified by physical impairment, education, or the inability to speak English. Yet the experts agreed that he was disqualified from this job as well. His prior conviction placed it out of reach.[3]

To return to the *Zimmerman* "ultimate question," the evidence supports the determination that, in a competitive labor mar-

ket, the claimant in his injured condition could probably not sell his services at all.

The Fund argues, however, that it violates public policy to extend the benefits of the reasonable availability standard to one for whom physically suitable and otherwise attainable employment is precluded only by reason of previous criminal behavior and conviction. We disagree. First, we note that here, as in *Hairston*, claimant committed his crime "well before his injury, not in contemplation of it." 849 F.2d at 1196. Second, our supreme court has held:

> [I]ndustrial compensation is not based on the good moral character of the claimant but is founded simply on an injury that is within the scope of the Workers' Compensation statutes.
>
> . . . .
>
> ... Any statutory construction which would exclude an employee from workers' compensation protection will require specific language to that effect.

*Marriott Corp. v. Industrial Comm'n*, 147 Ariz. 116, 120–22, 708 P.2d 1307, 1311–13 (1985) (citations omitted). Although the current case involves a diminution of benefits rather than a total exclusion, the *Marriott* rationale applies. Because the Workers' Compensation scheme is mandated by article 18, section 8 of the Arizona Constitution, "in the absence of a clear legislative intent, we do not feel at liberty to impose any limitations or exceptions upon the employee's statutory right to recover compensation." *Marriott*, 147 Ariz. at 121, 708 P.2d at 1312 (quoting *General Motors v. Hargis*, 114 Ga.App. 143, 150 S.E.2d 303, 305 (1966)).

## IV. APPORTIONMENT

The Fund lastly argues that the claimant's total disability, if upheld, is apportion-

---

**3.** In Arizona, a person must be certified by the Department of Transportation to be a school bus driver. A.R.S. § 28–414.01(B). The certification requires an investigation of the applicant's criminal background. A.R.S. § 28–414.01(D). Although a prior conviction does not generally disqualify an individual from government employment, "[a] person may be denied employment ... if the offense has a reasonable relationship to the functions of the employment." A.R.S. § 13–904(E). Although we decline to speculate whether a person convicted of indecent exposure could *ever* be hired as a school bus driver, we note the foregoing authority as support for the administrative law judge's conclusion that the claimant would not likely be hired by a school district.

able under A.R.S. § 23–1044(E). That subsection provides:

> (E) In case there is a previous disability, ... the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury.

A.R.S. § 23–1044(E) (Supp.1988).

■ Apportionment requires the preexisting condition to be disabling "at the time of the subsequent injury." *Id.* This requirement is satisfied if and only if an actual loss of earning capacity resulted from the preexisting condition. *See, e.g., Hoppin v. Industrial Comm'n,* 143 Ariz. 118, 122, 692 P.2d 297, 301 (App.1984); *accord* 2 Larson, *Workmen's Compensation Law* § 59.22(c), at 10–401 (1987) ("To be apportionable, then, an impairment must have been independently producing some degree of disability before the accident, and must be continuing to operate as a source of disability after the accident.")

■ We need not determine whether under different facts a prior felony conviction might constitute "a previous disability" for purposes of apportionment. In the present case, claimant was earning more than the statutory maximum wage as a farm worker when his injury occurred. His prior criminal conviction did not impair his ability to surpass the statutory maximum average monthly wage before his injury. The impact of claimant's prior conviction on his earning capacity materialized only when his present injury foreclosed heavy labor. Subsection 23–1044(E) does not apply.

## V. CONCLUSION

For the stated reasons, we affirm the award.

EUBANK and JACOBSON, JJ., concur.